The Gulf, Colorado & Santa Fe Railway Company v. Hume Bros.

No. 529.

1. Stipulated Limitation—Unreasonable.—A condition exacted by a carrier of a shipper, that suit should be filed and service of citation had in such suit within forty days from the loss, is unreasonable; and a demurrer to a plea setting up a failure under it was properly sustained.

2. Station Agent of Railway.—A railway station master is by virtue of his position ordinarily the agent of the carrier for the making of contracts to furnish cars at his station upon the road.   In order for the railway to relieve itself from liability it devolved upon it to show want of authority in the agent, and that the shipper knew it.

3. Same. — Where it is understood that the shipper knew of no limitation upon the authority of the station agent, it was proper for the court to instruct the jury that the agent had the power to contract for the railway for supply of cars, etc., for a shipper.

4. Heavy Pressure of Business.—Heavy and unprecedented traffic will not relieve a railway from liability for breach of its contract to furnish cars at agreed time and place for a shipper.

5. Measure of Damages—Delay.—Deterioration in value of cattle from shrinkage and loss of weight that resulted from holding cattle awaiting the ar-

rival of cars, beyond the stipulated time at which they were to be furnished, is the proper measure of damages for delay in furnishing cars.

6. **Same—Delay in Furnishing Cars.**—The contention that the necessary expense, if any incurred, in restoring the cattle to the condition they were in before their loss and shrinkage in weight, should be held as the measure of damages, can not be allowed.

APPEAL from Runnels. Tried below before Hon. W. J. Wingate.

*J. W. Terry*, for appellant.

*Willingham, Jenkins*, and *Powell & Smith*, for appellees.

FISHER, CHIEF JUSTICE.—By an amended petition filed March 23, 1891,. the plaintiffs alleged, in substance, that on or about the 1st day of April,. 1890, the plaintiffs owned 2075 head of cattle of the value of $15 per head, which they were desirous of shipping from Ballinger to a point in the Indian Territory on the line of the defendant company's railway and connecting railway lines, to-wit, Ponca, Indian Territory. That on the 1st. day of April, 1890, plaintiffs and defendant company, through its authorized local station agent at Ballinger, Texas, to-wit, George W. Smith, made and entered into the following verbal contract, to-wit: The defendant. then and there contracted, promised, and agreed with plaintiffs to furnish. plaintiffs at said Ballinger station, on the 7th day of April, 1890, seventy-five stock cars, in which the aforesaid cattle were to be shipped from said Ballinger station as herein before alleged; and thereafter the plaintiffs. rounded up the cattle and held them under herd or in small pastures for several days, and drove a part of them to Ballinger, and had to drive them back again, and for a number of days continued to hold them in said pastures under herd, and had men employed for the same; and that keeping the said cattle in a small pasture destroyed the grass in the same; and this condition of things continued for a number of days before the cattle were finally shipped; and that during the time the defendant, by its local agent at Ballinger, repeatedly made promise that the cars would be furnished from day to day, etc. That the shipment of the stock was not completed until the 30th day of April, 1890; that during the time of the delay plaintiffs. kept in their employ eight men at an expense of $2.50 per day for a period of eighteen days, amounting in the aggregate to $360, the employment of which men was necessary to take care of the cattle during the delay. That on account of keeping the cattle under herd or in said small pastures, and driving a part of them to and from the station, they were injured and reduced in flesh an average of at least $5 per head. That the grass in the small pasture, which was totally destroyed by the cattle, was of the value of $1000. Plaintiffs also claimed a number of penalties for failure to fur-

nish cars, which were abandoned on the trial, and the allegations in respect thereto for that reason are not stated.

The defendant answered by general denial and special defenses, which will appear under the different assignments.

There was a verdict and judgment for the plaintiffs for the sum of $5510.

*Findings of Fact.*—We find as a fact, that the appellees were at the time alleged the owners of the cattle mentioned in their petition, and at the time alleged the appellees did enter into and make with appellant, through its station agent at Ballinger, Texas, George W. Smith, the verbal contract set out and alleged by the appellees in their petition; and we further find as a reasonable inference to be drawn from the evidence, that the said George W. Smith, as the agent of appellant, did have the authority to enter into said contract with the appellees; and if there is any doubt upon this point, we find as a fact that appellees did not know or have any knowledge at the time the contract was made of any limitation imposed by the appellant upon the authority of said Smith to contract about the furnishing of cars and the shipment of cattle. We further find, that the appellant violated the contract in the manner and form as alleged by the appellees, and that the appellees, in the manner as alleged, sustained as a result of the breach of the contract the damages as alleged, and that the amount thereof as fixed by the jury is supported and warranted by the evidence.

We find as a fact that the appellant and the agent of the appellees, subsequent to the making of the verbal contract, made and entered into the written contract of shipment set out by appellant in its answer; and that said contract, among other provisions, contained the following: "That no suit or action against the said company [meaning defendant] for the recovery of any claim by virtue of this contract, or for loss or damage to said stock or decrease in the market value thereof, from delay or any other cause, while in transportation or at stations on the company's road, or for breach of any alleged contract concerning the shipment of said stock or furnishing of cars made before the receipt of the stock by the company or before the execution hereof, on account of the breach of any written or verbal agreement or contract whatever concerning the said stock prior to the execution hereof, shall be sustainable in any court of law or chancery unless such suit or action shall be commenced and citation served within forty days next after the loss or damage shall have occurred; and should any suit or action be commenced against the company [meaning defendant] after the expiration of the aforesaid forty days, the lapse of time shall be taken and deemed conclusive evidence against the validity of such claim or cause of action, and shall be a complete bar to such suit, any statute of limitation to the contrary notwithstanding."

We also find, that the agent of the appellees, when he executed the written contract of shipment, had authority to enter into a contract of shipment binding upon the appellees, but he had no authority to waive or release or modify any right or claim the appellees had by virtue of the previous verbal contract. And we further find, that the stipulation in the clause of the contract just set out is alleged to be based upon the consideration of a reduced rate of freight accorded to the appellees; and we find as a fact, that this averment is not true, and that no reduced rate of freight was given or allowed the appellees in the shipment of the cattle, but upon the contrary, the evidence shows that the usual and customary rate of freight was charged them. Therefore we find as a fact, that that part of the above stipulation as affects the verbal contract with reference to furnishing cars is without consideration.

*Opinion.*—The appellant in its answer set up in bar of the appellees' suit that provision of the written contract of shipment set out in the findings of fact, and alleged that the suit had not been brought and citation served within forty days after the breach of the verbal contract, and also alleged that this provision of the contract was based upon a sufficient consideration, and that it was executed by the agent of the appellees under their authority. A demurrer was sustained to this part of the answer, and this ruling presents the first question for our consideration.

This pleading presents a good defense, and the demurrer should not have been sustained if it can be held that this contract is reasonable. Contracts of this character limiting the time in which suit should be brought are held to be valid and binding, if from the contract itself or the facts of the particular case they are reasonable. Railway v. Trawick, 68 Texas, 314; Railway v. Garrett & Spiller, 5 Texas Civ. App., 540.

If from the contract itself or the facts of the case, even though one of interstate shipment (Railway v. Garrett & Spiller, 5 Texas Civil Appeals, 540), it appears that it is unreasonable, it should not be enforced. This contract requires that not only suit shall be commenced, but that citation shall be served within forty days next after the damage or loss occurs.

We believe that inasmuch as the contract requires citation to be served within forty days, it renders it unreasonable, and that it is an improper stipulation to be imposed upon the shipper. It places the carrier in a position to defeat the contract by its bringing about a situation that will or may make it difficult or impossible for the shipper to obtain the service of the citation. It is admitted that it is not probable that the carrier would do that, but it is possible that it may, and the fact that it may be and can be done is what, in our opinion, renders for one reason that provision of the contract unreasonable. But the principal ground upon which we hold it unreasonable is, that it makes the shipper responsible for

the diligence of the officer who is entrusted by law with the execution and service of the process. Neither the shipper nor the carrier can control him in this matter to the extent that would absolutely require him within a certain or given number of days to execute the service of citation. He is charged with diligence in the exercise of this duty, and for a failure of duty in this respect he may be required to respond in such damages as the injured party has sustained by reason of his negligence, or if he refuses to perform his duty, mandamus may in some instances lie to compel him to do so. He may fail to execute the citation within the time required, and still have been ever so diligent in his effort to do so, and if his efforts show a reasonable exercise of diligence to obtain service, the courts would not undertake by mandamus or any other proceeding to compel him in his efforts to go beyond this extent.

The matter of issuing the citation and the service of the process is entrusted by law to the performance of certain officers charged with that duty, and in the manner and time of the execution of the process the officer is not so far under the control of the plaintiff as to charge him with the negligence of the officer if he does not execute the service within a given time, unless it be a case in which the plaintiff may instruct the officer not to serve it.

The effect of this stipulation is to hold the shipper responsible for the negligence of the officer, a person whom practically he can not control, and whom he can not require to execute process within a given number of days. We hold this provision of the contract unreasonable in the eye of the law, and that no error was committed in sustaining the demurrer.

We do not think there was any error committed by the trial court in respect to the matters complained of in the fifth, eighth, tenth, fourteenth, seventeenth, and eighteenth assignments of error.

The station master is by virtue of his position ordinarily the agent of the carrier for the making of contracts such as sued on by the appellees in this case, and if the carrier seeks to limit the authority that is implied from the nature of his agency, he must show by evidence not only that the authority did not exist, but that such fact was known to the shipper.

The charge of the court holding that the agent had authority to make the contract to furnish the cars binding on the appellant was a correct statement of the law. The evidence clearly shows that the appellees did not know of any want of authority in the agent, Smith, to make the contract; and if the excluded evidence had been admitted its effect would have been only to show that Smith's authority to contract was limited; but it would not have been sufficient to show that the appellees knew that fact, even when taken in connection with the evidence of appellee Hume, wherein he states that he had before shipped stock under written contracts similar to the one pleaded by the appellant.

In reply to the thirteenth, sixteenth, and nineteenth assignments of errors, we will say, that it is the law in this State that heavy and unprecedented traffic can not relieve the carrier of the consequences that result from a breach of contract that he has made to furnish cars at a certain time.    Cross v. McFadin & Logan, 1 Texas Civ. App., 461.

We think the trial court correctly stated the measure of damages as shown by the facts in this case.    The deterioration in the value of the cattle from shrinkage and loss of weight that resulted from holding them awaiting the arrival of the cars and that was the result of the breach of the contract to furnish cars for their transportation, is, we think, the proper measure of damages for this item (3 Sutherland on Damages, 216–248), although the cattle were not intended for immediate sale in the market.

The contention of the appellant, that the necessary expense, if any, incurred in restoring the cattle to the condition they were before their loss and shrinkage in weight, is the measure of damages, does not, we think, present the proper measure of compensation.    The rule that fixes the measure of damages at the difference in the value of the cattle before the shrinkage and loss in weight and after is easily susceptible of proof, and furnishes a measure that can then be ascertained as soon as the breach of the contract occurs, and one certain in character, about which there can be little speculation.

Also, another important fact in this connection to be considered is, that the loss in weight and value is directly referable to the wrongful breach of the contract, and is the proximate result and consequence of that breach; and as compensation for this wrong the appellee is immediately entitled to his action for the damages as then existing.    The damage then existing is the immediate loss in the weight and value of the cattle that is known and can be ascertained; but if he is held to be entitled only to what it may cost to restore the cattle to their former condition, this would require the shipper to hold his action in abeyance until this cost could be ascertained by the subsequent event of restoring the cattle to their former condition.    Such a rule, it seems to us, would have the effect of extending to the violator of the contract a partial relief from the consequences of his breach.    An effort to ascertain what it would cost to restore the cattle to their former condition, if undertaken before this condition was actually restored, would be accompanied with much uncertainty and speculation, and would rest the plaintiff's right to compensation upon such uncertain elements and contingencies that might practically deprive him of indemnity in part, and to relieve the defendant in some respects from the consequences of the breach of the contract that were occasioned by his wrongful act.

The question asked witness Wily, as shown by the twelfth assignment of error, was in response and explanation of a matter that was brought

out by the appellant in its examination of this witness. Under the circumstances there was no error in the question and the answer of the witness.

The judgment is affirmed.

*Affirmed.*

Delivered January 31, 1894.