W. Frank Clark, Respondent, *v.* The Ulster and Delaware Railroad Company, Appellant.

1. Common Carriers — When Promise of Station Agent of Railroad Company to Furnish Freight Car Constitutes a Contract Binding on the Company. A request to a station agent of a railroad company to furnish a freight car for the shipment of live stock, followed by the promise of the agent to furnish the car at a specified station on a specified day, constitutes a mutual contract binding the company to furnish the car and the shipper to furnish the live stock to load the car; if the railroad company fails to furnish the car as agreed, the shipper may recover the expenses and loss caused by such failure, and if the shipper fails to furnish the stock to load the car, the railroad company may recover the loss it may sustain by the non-user of the car.

2. Same — When Oral Contract That Railroad Company Would Furnish Car for Shipment of Live Stock at Specified Time and Place Is Not Merged Into Written Contract Limiting Liability of Company for Stock in Transitu. Where a railroad company, through a local station agent, made an oral contract to furnish a railroad car for the shipment and transportation of live stock, such car to be at a specified station on a specified day, on which day the shipper had the stock brought to the station specified for shipment, but the company failed to provide a car as agreed, so that the shipment was not made until a week later, the oral contract was not merged into a written contract, which the company required the shipper to sign at the time the stock was shipped, relating to and limiting the future liability of the company for the live stock, after its delivery to the company for conveyance to its destination, and by signing the written contract the shipper

did not, in the absence of any consideration or stipulation therefor, waive his right of action, upon the breach of the oral contract, for the expenses of caring for the stock during the week of detention at the point of shipment and for the depreciation in the market value of the stock caused by the delay.

*Clark* v. *Ulster & Delaware R. R. Co.*, 114 App. Div. 908, affirmed.

(Argued May 8, 1907; decided June 14, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 9, 1906, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Amos Van Etten* for appellant. The shipping order and live stock contracts signed by the plaintiff before the delivery and loading of the stock made the contract between the parties and controlled. It was error on the part of the trial justice to admit evidence of prior negotiations and conversations. (*Waldron* v. *Fargo*, 170 N. Y. 130; *Long* v. *N. Y. C. & H. R. R. R. Co.*, 50 N. Y. 76; *Hill* v. *S., B. & N. Y. R. R. Co.*, 73 N. Y. 351; *G. F. Ins. Co.* v. *M. & C. R. R. Co.*, 72 N. Y. 90; *M., K. & T. R. Co.* v. *Byrne*, 100 Fed. Rep. 359; 1 Hutchinson on Carriers [3d ed.], 111, § 114; *Engelhorn* v. *Reitlinger*, 122 N. Y. 76.) The trial justice erred in the legal proposition that the request for a car and the promise that the order for a car would be fulfilled formed a contract. (*C. & G. E. R. R. Co.* v. *Dane*, 43 N. Y. 240; *Grosvenor* v. *N. Y. C. R. R. Co.*, 39 N. Y. 34; *L. & L. F. Ins. Co.* v. *R., W. & O. R. R. Co.*, 144 N. Y. 200.) The conceded facts proven by the plaintiff on this trial do not make a cause of action as matter of law. (*Carpenter* v. *Taylor*, 164 N. Y. 171; *Thompson* v. *Poor*, 147 N. Y. 402; *Birkett* v. *Nichols*, 184 N. Y. 315; *Cau* v. *T. & P. R. Co.*, 194 U. S. 427; *Dorr* v. *N. J. S. N. Co.*, 11 N. Y. 485; *Long* v. *N. Y. C. R. R. Co.*, 50 N. Y. 76; *Magnin* v. *Dins-*

*more,* 56 N. Y. 168; *Waldron v. Fargo,* 52 App. Div. 18; *Zimmer* v. *N. Y. C. & H. R. R. R. Co.,* 137 N. Y. 460; *Jones* v. *N. Y., L. E. & W. R. R. Co.,* 3 App. Div. 341.)

*C. L. Andrus* for respondent.   The shipping bill signed by the plaintiff in no manner absolved the defendant from liability. (*Robinson* v. *N. Y. & T. S. Co.,* 63 App. Div. 214; *Jennings* v. *G. T. R. R. Co.,* 127 N. Y. 438; *Wheeler* v. *O. S. N. Co.,* 125 N. Y. 155; *Hill* v. *S., B. & N. Y. R. R. Co.,* 73 N. Y. 351.)   The contract which the plaintiff claims the defendant failed to carry out, to wit, that a car should be furnished him by the defendant for shipment upon a particular date, and the breach thereof, was abundantly established by the evidence. (*Riley* v. *N. Y., L. E. & W. R. R. Co.,* 34 Hun, 97; 127 N. Y. 449; *Saltsman* v. *N. Y. C. R. R. Co.,* 65 Hun, 448; *Waldron* v. *Fargo,* 170 N. Y. 130; *Lowenstein* v. *Lombard, Ayers & Co.,* 164 N. Y. 329.)   Under well-established rules of law the defendant was liable in this action. (*L. & L. F. Ins. Co.* v. *R., W. & O. R. R. Co.,* 144 N. Y. 200; *Blossom* v. *Garvin,* 13 N. Y. 469; *Coyle* v. *W. R. R. Corp.,* 47 Barb. 152; *Grosvenor* v. *N. Y. C. R. R. Co.,* 39 N. Y. 34; *Strought* v. *N. Y. C. R. R. Co.,* 92 App. Div. 584; *Condict* v. *G. T. R. R. Co.,* 54 N. Y. 500; *Zinn* v. *N. J. S. Co.,* 49 N. Y. 442; *Sherman* v. *H. R. R. Co.,* 64 N. Y. 254; *Tierney* v. *N. Y. C. R. R. Co.,* 76 N. Y. 305.)

WILLARD BARTLETT, J.   The plaintiff in this action has recovered a verdict against the defendant for damages sustained by him in consequence of the defendant's breach of a contract whereby it undertook to furnish a car at certain stations upon its line for the shipment by the plaintiff of a lot of live stock to Kingston and thence by the West Shore railroad to the city of New York.   The judgment entered upon the verdict has been unanimously affirmed by the Appellate Division, and the principal question presented by the defendant's appeal to this court is whether the interviews between the plaintiff and the defendant's station agent at the point of

shipment constituted an agreement binding upon both parties for the violation of which the defendant is legally liable. According to the testimony of the plaintiff he applied on Monday, June 29th, 1903, to Fred More, the station agent of the Ulster and Delaware Railroad Company at Hobart, New York, to furnish a car at that station and Grand Gorge on the ensuing 7th of July for the transportation of cattle to New York. The plaintiff said : " Fred, I want a car for a week from to-morrow." The agent answered : " All right, you can have one." The purpose for which the plaintiff desired the car was expressly stated as being " to ship a car of cattle." On the Wednesday or Thursday succeeding this conversation the plaintiff had a further interview with the station agent which he narrated as follows : " I told him I wanted to find out whether or not I was going to have that car sure and for him to ask the railroad company if I could have it for sure and if I could fill out at Grand Gorge, and he asked them. He telegraphed them. He told me he telegraphed and he said I could have the car and I could fill out down there at Grand Gorge." Acting upon this assurance the plaintiff had the cattle, swine and sheep which he proposed to ship brought to the stations indicated and in readiness to be placed upon the car there on Tuesday, July 7th, 1903. The defendant, however, failed to furnish the car, and none was provided until the night of Thursday, the 9th. This was too late to permit the arrival of the stock in New York on a market day in that week. The result of the delay was that the animals were not taken on board until July 14th, 1903, on which date the plaintiff was required by the station agent to sign a written agreement in reference to the transportation of the animals commonly denominated a live stock contract. The damages awarded by the jury represent the expense to which the plaintiff was put in caring for the live stock during the week of their detention at the points of shipment and the depreciation in their market value caused by the delay.

The complaint was so framed as to charge the defendant not only upon the express oral contract made through its sta-

tion agent by means of the interviews already narrated, but also upon the obligation of the railroad corporation as a common carrier. The case went to the jury, however, solely upon the issue of an express contract; and the main points argued here in behalf of the appellant are the propositions, *first*, that the live stock contract in writing merged all the negotiations involved in the interviews of the previous week, and, *secondly*, that those interviews cannot be held to amount to a contract inasmuch as there was a lack of mutuality.

As to the first proposition it is to be noted that the live stock contract does not relate to the same subject-matter as the interviews. The subject-matter of the conversation with the station agent was the furnishing of a cattle car at certain specified stations at a specified time for the transportation of the plaintiff's live stock. The subject-matter of the live stock contract was the extent of the obligations to be assumed by the Ulster and Delaware Railroad Company after the delivery of the animals to that corporation for conveyance to their destination. This is apparent from the very beginning of the live stock contract which witnesseth that "the said shipper has delivered to the said carrier live stock" of the kind and number and consigned as indicated in the succeeding part of the document. In other words, the live stock contract spoke only *in futuro* and was designed simply and solely to limit the liability of the carrier after the business of transportation had begun. It in no wise referred to the furnishing of the car nor was there any language therein which could properly be held to have waived or otherwise affected any right which had accrued to the plaintiff in reference to that matter. Indeed, whatever right of action the plaintiff had by reason of the defendant's failure to furnish the car at the time promised by its agent was perfect and complete before the live stock contract was presented to him for signature. An oral contract whereby a railway company undertakes through a station agent to furnish cars for a shipment of live stock at a specified station and at a specified time is not avoided by a written contract signed by the shipper sub-

7

sequent to a breach of the oral contract unless there is in such written contract some consideration moving to the shipper as compensation for the damages already incurred by him. (*Gulf, Colorado & Santa Fe Ry. Co.* v. *House & Watkins,* 88 S. W. Rep. 1110; Court of Civil Appeals of Texas, June, 1905.) No such consideration can be discovered in the live stock contract in the present case. (See *Waldron* v. *Fargo,* 170 N. Y. 130, 137.)

The other point relied upon by the appellant, to wit, that the alleged oral contract was void for want of mutuality, assumes that the request by the plaintiff to the agent of the defendant to furnish the car, followed by the promise of the agent to comply with such request, imposed no legal obliga- tion upon the plaintiff to furnish any stock for shipment, or to compensate the defendant for its trouble and expense in furnishing the car in case he failed to make use of it. That this is the position of the learned counsel for the appellant is made clear by the following question on his brief: " Let us suppose that after this order for a car was given upon its arrival at Hobart on July 7th the plaintiff had then informed the agent that his stock had been sold and he would not ship, could the defendant then have recovered for a breach of the order as given ? "

We think there is no doubt that this question must be answered in the affirmative. The request that the car be furnished carried with it, by implication of law, an agreement to make use of it if the request was complied with and a cor- relative promise to pay to the defendant in the event of non- user whatever loss it might thereby incur. This obligation is just as clear as would be that of a person who went into a restaurant and ordered a dinner for a party of friends to pay for the meal furnished in accordance with his order, even though he produced no guests to partake of his hospitality. The mere order under such circumstances carries with it the implication of a promise to pay. " Where a relation exists between two parties which involves the performance of cer- tain duties by one of them and the payment of a reward to

him by the other, the law will imply or the jury may infer a promise by each party to do what is to be done by him." (Wald's Pollock on Contracts [3rd ed.], pp. 9 ,10.)   In the case at bar the request by the plaintiff, coupled with the assurance by the agent of the defendant that the car would be furnished, created a relation between the parties to the present action which plainly falls within the doctrine thus stated.

That a shipper's order calling for a specific number of cars for a specified day will, when accepted by a common carrier, constitute a contract binding the carrier to furnish the cars and the shipper to furnish the goods wherewith to load the cars has been expressly decided by the Circuit Court of the United States (*Mo. Pac. Ry. Co.* v. *Tex. & P. Ry. Co.*, 31 Fed. Rep. 864), and by the Appellate Court of Indiana (*Pittsburg, etc., Ry. Co.* v. *Racer*, 5 Ind. App. 209).   In the case last cited the court said: "If a shipper's order to a common carrier of live stock for a designated number of cars to be furnished at a station indicated, on a day mentioned in the future, for the transportation of such stock, is accepted by the carrier, such agreement would constitute a contract binding on the company to furnish the cars, and upon the shipper to furnish the stock to load them."   Indeed, no case is referred to by the learned counsel for the appellant which questions the legal obligation of a railroad company to perform such a promise as that testified to by the plaintiff in the case at bar.   The binding character of such an agreement is recognized by the text writers and by the courts wherever the question appears to have arisen: "Where a railroad company expressly undertakes by special contract to furnish cars at a specified time, it is bound to perform its contract."   (4 Elliott on Railroads, § 1473; *Gulf, etc., Ry. Co.* v. *Hume*, 6 Tex. Civ. App. 653; *Hoffman H. & S. Co.* v. *S. L., I. M. & S. R. Co.*, 119 Mo. App. 495; *Wood* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, 68 Iowa, 491; *Gulf, Colorado & Santa Fe Ry. Co.* v. *House & Watkins, supra.*)   In some cases the implied authority of a station

agent to bind the railroad company by a contract to furnish cars by a certain day has been questioned; but the prevailing doctrine is that such authority will be deemed to be included within the scope of his employment. (See *Wood* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, *supra*, and *Easton* v. *Dudley*, 78 Tex. 236.)

The only objections to the evidence offered to establish the amount of damage suffered by the plaintiff were based solely on the erroneous view that the live stock contract was the only agreement between the parties, and no exceptions were taken to the judge's charge in reference to the measure of damages.

We think that the judgment was right and should be affirmed, with costs.

GRAY, O'BRIEN, VANN, WERNER and CHASE, JJ., concur; CULLEN, Ch. J., absent.

Judgment affirmed.