# Central of Georgia Railway Company v. Sigma Lumber Co.

*Damage for Destruction of Lumber By Fire.*

(Decided Dec. 22, 1910. 54 South. 205.)

1. *Carriers; Goods; Duties to Transport.*—A carrier is bound to make all reasonable efforts to furnish facilities for the transportation of goods tendered to it for shipment; and, where it enlarges its liability by an unconditional expressed promise to move the goods at a certain time, such contract must be strictly performed, and any unavoidable accident or even impossibility of compliance will be no defense unless it is so stipulated in the contract.

2. *Same; Contract to Furnish Cars; Breach.*—In an action on the contract to furnish cars at a specific time, damages are recoverable for the breach; but where there is no express contract the proposing shipper is without action save for a breach of the carrier's general common law duty to furnish cars within a reasonable time.

3. *Same; Duty to Transport.*—Where the carrier had no agent or office at the proposed shipper's mill, but maintained a sidetrack there for the convenience of the carrier and the shipper, but through a course of dealing between the carrier and the lumber company cars were placed there for the purpose of loading and shipping lumber, and its freight trains were stopped there for the purpose of receiving shipping instructions, and transposing lumber, and the carrier placed cars upon said sidetrack at the request of the shipper to be loaded with lumber by the shipper for transportation, and after being loaded the shipper notified the conductor of one of the carrier's freight trains going east to have the next train going west stop and receive the lumber for shipment, but said train failed to do so, and in the meantime the lumber was destroyed by fire without other fault on part of the carrier, the carrier was not as a matter of law bound to take away the cars of lumber on its next train in the absence of an express contract to do so.

4. *Same.*—If a carrier expressly promised to remove lumber by its next train, it would be in duty bound to do so.

[Central of Georgia Railway Company v. Sigma Lumber Co.]

5. *Same; Injury by Providential Causes; Liability.*—Where goods are injured or destroyed by providential causes while in possession of a carrier in default the carrier is liable since its default is an operating cause concurrent with the providential cause.

6. *Same; Beginning of Liability.*—A carrier's liability for goods as a carrier begins when the goods are delivered to it ready for immediate shipment.

7. *Same; Contract for Safe Keeping.*—A contract imposing upon a carrier the exclusive duty of safekeeping goods may be implied by usage or by a particular course of dealing between the parties; but the implication that the carrier assumes the duty of immediate transportation, and hence the responsibility of an insurer, without knowing to what place and to whom the goods are consigned must be clear.

8. *Negligence; Proximate Cause.*—A wrong doer is responsible only for the proximate consequence of his acts.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by the Sigma Lumber Company against the Central of Georgia Railway Company for damages for the destruction of lumber. Judgment for plaintiff and defendant appeals. Reversed and remanded.

R. D. CRAWFORD, for appellant. The court erred in overruling appellant's demurrers to counts 1 and 2, and in refusing to give charges 11, 16 and 20.—*Missouri K. & T. R. R. Co. v. Witherspoon,* 38 S. W. 833; *Inman v. St. Louis,* 37 S. W. 37; *International v. Startz,* 33 SW 575; Hutchinson on Carriers, Vol. 3, sec. 1370.

ESPY & FARMER, for appellee. The duty on the part of the appellant to transport the lumber is shown.—*M. & E. R. R. Co. v. Kolb,* 73 Ala. 396. The refusal of the court to give the written charges requested by appellant is justified upon the principles declared in the following cases.—*Baxley v. T. & M. Co.,* 128 Ala. 183; *L. & N. v. Touart,* 97 Ala. 514; *M. & E. R. R. Co. v. Kolb, supra.*

SAYRE, J.—Count 1 avers a course of dealing between the parties in respect to the receipt of lumber for

shipment from plaintiff's mill. Defendant maintained a side track at plaintiff's mill, but had there no office or agent. It is to be inferred, of course, that the side track was maintained for the mutual convenience of the parties in the shipment of lumber. In pursuance of its usual practice defendant, on plaintiff's request, placed two cars upon the side track to be loaded by plaintiff with lumber for transportation on March 16, 1908. Plaintiff notified defendant's conductor on its train going east to have its next freight train going west to stop and get the lumber and then to receive shipping instructions. The next train going west passed plaintiff's mill in the afternoon of the next day. Defendant failed and refused to stop its next train going west. Defendant received no directions for the shipment of the lumber. During the night after defendant's next train passed going west, plaintiff's lumber was destroyed by fire. There is no allegation that the fire originated or was permitted to progress by any fault of the defendant; but it is alleged that the loss of the lumber was the proximate consequence of defendant's wrong in failing and refusing to stop its next freight train going west and take away the lumber. The purpose of the count is to state a breach of an implied contract to receive and take away plaintiff's lumber on a certain train, or at a particular time.

Upon a tender of goods to a common carrier for shipment, the carrier is bound, by reason of its general relation to the public, to make all reasonable effort to furnish cars—in this case motive power—for its transportation. But the carrier may enlarge its liability by an unconditional express promise to move the goods at a certain time, and such contract, like all others, must be performed according to their terms.—4 Elliott on Railroads, § 1473; *Clark v. Ulster, etc., R. R. Co.*, 189

N. Y. 93, 81 N. E. 766, 13 L. R. A. (N. S.) 164, 121 Am. St. Rep. 848; *Wood v. Chicago, etc., R. R. Co.*, 68 Iowa. 491, 27 N. W. 473, 56 Am. Rep. 861; *Gulf, etc., R. R. Co. v. Hume,* 6 Tex. Civ. App. 653, 24 S. W. 915. Unavoidable accident, or even impossibility, preventing compliance, will be no defense, unless it be so stipulated in the contract.—*Baxley v. Tallassee, etc, R. R. Co.*, 128 Ala. 183, 29 South. 451; 4 Elliott on Railroads, § 1473. Damages resulting from the breach of an express contract to furnish cars at a specified time are recoverable in an action on the contract. But the contract must be express, for otherwise the proposing shipper has no action save upon a breach of the carrier's general common-law duty to furnish cars within a reasonable time.—*Lake Shore, etc., R. R. Co. v. Anderson,* 39 Ind. App. 112, 79 N. E. 381; *Texas, etc., R. R. Co. v. Arnett,* 40 Tex. Civ. App. 76, 88 S. W. 448. There is no allegation that defendant delayed an unreasonable time. Nor can it be said as matter of law that it was the duty of the defendant under the circumstances shown ·in the count to take away plaintiff's lumber on its next train. The count avers no express contract. The demurrer to it should have been sustained.

We read count 2 as setting out, in addition to what is contained in count 1, an express promise to receive and remove plaintiff's lumber by defendant's next train. This count sufficiently stated a cause of action.

Appellant, referring to the fact that the fire which destroyed plaintiff's lumber originated without any fault whatever on its part, argues that, in the aspect of the case presented by count 2, the failure to carry the lumber away at the agreed time was nothing more than one of an interminable series of events without which the loss would not have occurred, that the fire was an independent intervening cause, and hence that the loss can-

not be attributed to that failure as a proximate cause. The necessary and therefore universal rule is that a wrongdoer shall be held responsible for the proximate consequence of his acts, not for those that are remote. This rule cannot be abandoned without producing the most astonishing and disastrous results. It is to be confessed, however, that, while the rule itself seems to be simple enough, the cases will be read with little appreciation, unless they leave the impression that there is frequent difficulty in its practical application. There can be nothing in the policy of the law, or in the general relations between common carriers and the public, which requires or permits that a rule as to responsibility for consequential damages, different from the rule obtaining between other parties, should be enforced against such carriers. This court has not intended a departure from these rules. But, in line with the ruling of the courts of a number of the states, it has twice been held by this court that where goods are injured or destroyed by providential causes while in the possession of the carrier, and the carrier is in default, as by undue delay, the carrier is liable for the reason that its default is an operative cause concurrent with the act of God.—*A. G. S. Ry. Co. v. Quarles & Couturie,* 145 Ala. 436, 40 South. 120, 5 L. R. A. (N. S.) 867, 117 Am. St. Rep. 54; *A. G. S. Ry. Co. v. Elliott,* 150 Ala. 381, 43 South. 738, 9 L. R. A. (N. S.) 1264, 124 Am. St. Rep. 72. The fact that at the time of the loss or injury complained of in those cases the goods were in the possession of the carrier in its capacity as carrier seems to have been considered as of importance; but the choice between the conflicting lines of authority was determined by the analogy supposed to be afforded by our previous dicisions in *Steel v. Townsend,* 37 Ala. 247, 79 Am. Dec. 49, and *L. & N. R. R. Co. v. Gidley,* 119 Ala.

523, 24 South. 753. In the *Quarles & Couturie Case,* the court reproduced from *Steel v. Townsend* a quotation from 1 Smith's L. C. 319, where the following language touching the question here at issue was used: "The true view is, not that the carrier discharges his liability by showing an act of God, and is then responsible, as an ordinary agent, for negligence, but that the intervention of negligence breaks the carrier's line of defense by showing that the injury or loss was not directly caused by the act of God, or, more correctly speaking, was not the act of God." In *L. & N. R. R. Co. v. Gidley* the contract limited the carrier's liability for loss by fire to such loss as was unavoidable by due care. It was held that a negligent delay in forwarding the goods rendered the carrier liable for the loss of the goods by fire before shipment, though no other negligence appeared. In the *Quarles & Couturie Case*, after referring to *Gidley's case* and *Steele v. Townsend,* it is stated that "the principle which must control is the same whether the carrier undertakes to exempt itself from liability as an insurer by the act of God or the public, or by contract against fire not occasioned by its own neglect." In the *Elliott Case* the expression was that the act of God and the negligent delay were concurring causes. The ruling in both was that the fire pending the delay was not an intervening cause, and that the carrier was liable "for the reason that it was by his fault that they (the goods) were exposed to the peril." The question in respect to proximate cause was and is the same in all these cases (including the case at bar), and has been deliberately settled here adversely to appellant's contention. There was evidence tending to sustain count 2. The issues raised by the count and the pleas—the sufficiency of which is not questioned in appellant's brief—was properly submitted to the jury for decision.

[Central of Georgia Railway Company v. Sigma Lumber Co.]

Count 3 was in the form provided by the Code of 1907 for a complaint on a bill of lading (form 15, section 5382), and, notwithstanding its dubious form, has been frequently held to state a cause of action in contract. —*Tallassee falls Co. v. Western Railway*, 117 Ala. 520, 23 South. 139, 67 Am. St. Rep. 179, and cases there cited. The carrier's liability for goods as a carrier begins when they are delivered to it ready for immediate transportation. In *Barron v. Eldredge*, 100 Mass. 458 (1 Am. Rep. 126), the rule is thus stated: "The responsibility of a common carrier for goods intrusted to him commences when there has been a complete delivery for the purpose of immediate transportation. * * * The delivery must be for immediate transportation, and, of course, it cannot be complete if anything remains to be done by the shipper before the goods can be sent on their way." "If a common carrier," to quote Moore on Carriers, "receives goods into his own warehouse for the accommodation of himself and his customers, so that the deposit there is a mere accessory to the carriage and for the purpose of facilitating it, his liability as a carrier will commence with the receipt of the goods. But, on the contrary, if the goods when so deposited are not ready for immediate transportation, and the carrier cannot make arrangements for their carriage to the place of destination until something further is done, or some further direction is given or communication made concerning them by the owner, or consignor, the deposit must be considered to be in the meantime for his convenience and accommodation, and the receiver, until some change takes place, will be responsible only as a warehouseman."—Moore on Carriers, 130. The same principle is laid down in Hutchinson on Carriers (3d Ed.) § 72. A contract imposing upon the carrier the exclusive duty of safe-keeping may be implied by

usage or a particular course of dealing between the parties. But the implication that the carrier assumes the duty of immediate transportation and so responsibility as an insurer, without knowing to what place and to whom goods are to be shipped, must be clear. Accordingly, it was held by this court that, where cars were switched off on a side track of the defendant carrier, there to remain until shipping directions were given, the defendant did not become a common carrier in respect to the freight thereon until shipping directions were furnished—this notwithstanding it had been the custom of the carrier for years so to receive freight without other notice than its being placed upon the side track.—*A. G. S. R. R. Co. v. Mt. Vernon Co.*, 84 Ala. 173, 4 South. 350. And in *L & N. R. R. Co. v. Echols*, 97 Ala. 556, 12 South. 304, it appears to have been assumed as a matter of course that shipping directions were necessary to the carrier's responsibility as an insurer. So, then, the duty and responsibility of the defendant which are to be inferred from the facts were at most the duty and responsibility of a warehouseman only, measured by reasonable reference to the known facilities which it lawfully maintained at that point, or its liability was for a breach of its alleged special contract to take the goods away at a particular time. The third count claims damages for a failure to deliver two cars of lumber received by it as a common carrier. There was a material variance between this count and the facts as plaintiff would have them, and defendant was entitled to the general charge as to it.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.