## SOUTHERN RY. CO. *v.* SHIPLEY.*

### (*Knoxville.*   September Term, 1922.)

1. **CARRIERS.** Liable for breach of contract to furnish car at specified time.

   A railroad company which undertakes by contract to furnish a car at a specified time is bound to perform that contract, and for a breach of it the shipper can recover all damages which naturally and proximately result. (*Post, p.* 44, 45.)

   Cases cited and approved: Railroad v. Pounders, 4 Hig., 372; Clark v. Ulster & D. R. Co., 189 N. Y., 93; Wood v. Chicago, M. & St. P. Ry. Co., 68 Iowa, 491.

2. **CARRIERS.** Bill of lading requiring notice limited to acts after car was furnished.

   A bill of lading for a carload of calves, which recited that the calves had been received by the carrier and that the shipper had examined the car furnished him, and which otherwise used the future tense, by its grammatical construction excludes the idea that it was intended to affect the rights of the parties prior to the time the car was furnished, so that the provision requiring notice of claim for damages does not require such notice of claim for damages caused by breach of contract to furnish the car at the time agreed upon. (*Post, p.* 45, 46.)

3. **CARRIERS.** Clause requiring notice of claim applies to liability arising from beginning to end of transportation.

   The clause of a bill of lading requiring presentation of a written claim is valid and controlling as to any liability arising from the beginning to the end of the transportation contracted for and the term transportation has a broad scope, under the Hepburn Act. (*Post, p.* 46.)

---

*On general or statutory duty of carriers as to furnishing cars see notes 43 L. R. A. 225; 8 L. R. A. (N. S.), 108; 13 L. R. A. (N. S.), 164 and 44 L. R. A. (N. S.), 643.

On Carmack amendment as affecting state regulations as to stipulations limiting liability of common carrier for the loss or damage to goods see notes 44 L. R. A. (N. S.), 457 and 50 L. R. A. (N. S.), 819.

Southern Ry. Co. v. Shipley.

Cases cited and approved: Erie R. Co. v. Shuart, 250 U. S., 465; Cleveland, C., C. & St. L. R. Co. v. Dettlebach, 239 U. S., 588.

4. **CARRIERS:** Requirement of notice is imposed only by contract, not by law.

Even though the delivery of calves to a carrier for shipment is the beginning of transportation, either at common law or under the statute, there is no duty imposed by law upon the shipper to give notice for any claim for damages arising thereafter, and such notice can be imposed only by contract. (*Post, p.* 47.)

5. **CARRIERS.** Contract operating only after car is provided cannot affect right previously accrued.

A bill of lading, which on its face excludes the idea that it began to operate before a car was provided for the shipper, cannot affect the rights of the parties accruing prior thereto merely because transportation may have begun before that time. (*Post, p.* 47.)

Case cited and approved: Yazoo & M. V. R. Co. v. Nicholas & Co., 256 U. S., 540.

6. **CARRIERS.** Statutory duty to issue bill of lading on receiving property does not make notice provision apply at that time.

Even if the Carmack Amendment (U. S. Comp. St. section 8604a), requiring a carrier receiving property for transportation to issue a bill of lading therefor, requires the issuance of such bill of lading upon the delivery of calves to the carrier's stock pen for shipment, such duty cannot be given the effect of making applicable to damages inflicted prior to the furnishing of a car the provision of the bill of lading subsequently issued requiring notice of claim, where the bill of lading by its terms applied only after the car had been furnished. (*Post, p.* 47.)

7. **CARRIERS.** Provision against varying bill of lading does not invalidate prior contract for furnishing car.

A provision stamped on the bill of lading that it contains the entire bargain between the shipper and the company does not invalidate a prior contract between the shipper and the company for the furnishing of a car at a specified time. (*Post, p.* 47, 48.)

8. **CARRIERS.** Shipper held entitled to damages suffered while calves were waiting for car.

Southern Ry. Co. v. Shipley.

Where the provision of a bill of lading requiring notice of claim was limited to the period after the car was furnished for the shipment, the shipper can recover, for breach of a contract to furnish the car at a specified time, the deterioration in the value of his calves while they were awaiting shipment before the car was furnished, including their loss in weight, and the expense of caring for them. (*Post, p.* 48).

9. CARRIERS. Shipper cannot recover for breach of contract to furnish car damages during transportation.

Where a shipper who failed to give notice of claim was entitled to recover for breach of contract to furnish the car, which was not affected by the bill of lading, but not to recover for damages during transportation under the bill of lading, he cannot recover damages resulting from depreciation in value at the market, though the delay in reaching the market was due to the delay in furnishing the car, since an allowance for such depreciation assumes a contract to transport to the market. (*Post, p.* 48, 49.)

10. APPEAL AND ERROR. Erroneous instruction on damages does not require reversal if damages may be calculated.

Where the damages recoverable in an action may be readily calculated, an error in the charge as to the measure of damages does not require a reversal, but may be cured by a *re mittitur* of the damages allowed in excess of the proper amount. (*Post, p.* 49.)

FROM WASHINGTON.

Appeal from the Circuit Court of Washington County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. D. A. VINES, Judge.

BURROW & BURROW, for Southern Ry. Co.

DIVINE & GUINN, for A. J. Shipley.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought to recover damages to a carload of calves which the plaintiff below undertook to ship from Jonesboro, Tenn., to Philadelphia, Pa., over the line of the Southern Railway.

There was a judgment in favor of Shipley in the trial court for $400, which was affirmed by the court of civil appeals. The railway company has brought the case to this court upon petition for *certiorari* and the case has been argued here.

There is little conflict in the proof. It tends to show that on September 9, 1920, Shipley requested the agent of the railway company at Jonesboro to furnish a stock car for the shipment of about ninety-four calves to Philadelphia. The agent of the railway company agreed to do this, and Shipley assembled his calves in a livery stable at Jonesboro. On the morning of September 15th, the agent of the railway company notified Shipley that the car was ready, and Shipley put the car in order, placed bedding in it, and drove his calves to the stock pens of the railway company for loading. About the time Shipley undertook to load the calves into the car prepared, an engine was brought up, hooked onto said car, and the car was taken away and delivered to another shipper, to whom the railway company claims to have been under an earlier obligation to supply a car.

Shipley protested about this car being taken away from him and was promised another one right away. He kept his calves in the pen, expecting another car at any time, but did not get a car until late in the afternoon of the next day, September 16th, when he loaded the calves and shipped

them to Philadelphia as contemplated. The calves thus remained in the stock pen two days and a night, during which time it rained heavily, and the calves, being wet and chilled, drifted, or lost in weight very considerably. It is to recover for this damage to the calves, for certain expense incident to their detention in the stock pen, and for loss of a favorable market at Philadelphia by reason of the delay that this suit is brought.

Where a railroad company undertakes by contract to furnish a car at a specified time, it is bound to perform this contract, and for a breach thereof the shipper is entitled to recover all damages which naturally and proximately result. *Railroad* v. *Pounders,* 4 Hig., 372, affirmed by this court; 4 Elliott on Railroads, section 1473; *Clark v. Ulster & D. R. Co.,* 189 N. Y., 93, 81 N. E., 766, 13 L. R. A. (N. S.), 164, 121 Am. St. Rep., 848, 12 Ann. Cas., 883; *Wood* v. *Chicago, M. & St. P. Ry. Co.,* 68 Iowa, 491, 27 N. W., 473, 56 Am. Rep., 861.

This principle of law is not controverted by the railway company, but it is insisted that Shipley is not entitled to recovery because he failed to comply with the provision of the bill of lading, or contract of shipment, as follows:

"That as a condition precedent to any right to recover any damage for loss or injury to said live stock, notice in writing of the claim therefor shall be given to the agent of the carrier actually delivering said live stock wherever such delivery may be made, and such notice shall be so given before said live stock is removed or is intermingled with other live stock."

It is conceded that no written notice was given as required by the foregoing.

The court of civil appeals was of opinion that the clause quoted had no application to claims for damages founded upon a breach of the contract to furnish a car, as distinguished from claims for breach of the written contract of transportation. The railway company contends that the written contract defines and governs all the obligations of the parties in the premises.

While the question is not free from difficulty, we think that the court of civil appeals was right.

The written contract between the parties was undoubtedly executed after the first car was taken away from Shipley and after the second car had been furnished him. It seems to us that the contract by its terms excludes the idea that it covered the period that these calves were detained in the stock pen awaiting the second car.

The contract recites: "Received by Southern Railway Company of Bige Shipley, the following described live stock, as per margin, to be transported to the destination hereinbelow mentioned, if on the road of Southern Railway Company, or to deliver to another carrier on the route to said destination, subject in either instance to the terms and conditions named below, which are agreed to in consideration of the rate named."

The consignee, destination, and description of the live stock are then set out. Certain provisions with reference to the special rate under which the shipment is made follow, and then comes the first covenant and agreement of the shipper, in these words:

"That he has examined and has found in good order and condition the car or cars provided by the railway company for the transportation of said live stock and hereby accepts the same and agrees that they are as thus provided, suitable and sufficient for said purpose."

The contract thus shows on its face that it began to operate from a time after a car "was provided by the railway company for the transportation of said live stock." It is stated that the shipper "has examined and has found in good order and condition the car, etc."

All the following stipulations of the contract, 2 to 10, undertake the define future rights and obligations of the parties. The future tense is uniformly employed throughout this contract, except in the agreement about the special rate and in the shipper's agreement that he has examined the car.

It is true that in the second covenant reference is made to the care of the stock while in the yards of the railway company awaiting shipment. But here the shipper agrees "that he will load and unload said animals at his own risk, and feed, water and attend the same at his own expense, etc." This paragraph follows the paragraph in which the shipper states that he has examined the car, and the care of the stock in the yards thus undertaken is care of them after a car has been provided.

We could not refer the origin of this contract to a time before a car was provided for the shipper and make the contract relate to such a time without doing violence to the grammatical construction of language carefully chosen.

We recognize that "the clause requiring presentation of a written claim is clearly valid and controlling as to any liability arising from the beginning to end of the transportation contracted for." *Erie R. Co.* v. *Shuart,* 250 U. S., 465, 39 Sup. Ct., 519, 63 L. Ed., 1088. We appreciate the scope of the term "transportation" under the Hepburn Act (34 Stat. at L. 584, c. 3591). *Cleveland, C., C. & St. L. R. Co.* v. *Dettlebach,* 239 U. S., 588, 36 Sup. Ct., 177, 60 L. Ed., 453.

Suppose, however, the delivery of the calves to the stock pen of the railway company was the beginning of their transportation at common law or under the statute, it still required a contract between the parties to impose upon the shipper the duty of giving written notice as to his claim for damages. The law imposed no such duty upon him.

A contract which on its face excludes the idea that it began to operate, prior to the time when a car was provided for the shipper, cannot affect the rights of the parties accruing prior thereto. A carrier cannot obtain the benefit of inapplicable provisions or exemptions in its contract of shipment merely because transportation may have begun. *Yazoo & M. V. R. Co.* v. *Nicholas & Co.,* 256 U. S., 540, 41 Sup. Ct., 549, 65 L. Ed., 1081.

We think the "transportation contracted for" in the written contract here relied on by the carrier began with the acceptance by the shipper of the car provided by the carrier for this shipment. Earlier obligations of the parties are fairly excluded by the very language used.

It is possibly true that the bill of lading or contract furnished to this shipper should have related to the delivery of the calves to the stock pen by reason of the provisions of the Carmack Amendment (U. S. Comp. St., section 8604a) :

"That any common carrier, railroad or transportation company receiving property for transportation . . . shall issue a receipt or bill of lading therefor," etc.

Ordinarily, the language used would be sufficient to cover the entire transaction, because ordinarily a shipper would not drive his cattle to the loading pen until a car had been provided. Had the first car brought to the loading pen been left there for the use of this shipper, the written con-

tract would have been adequate. But this is an exceptional case, and we do not feel that we could stretch this contract in defiance of its terms merely to satisfy a presumption that the carrier intended to contract with reference to the law.

The railway company relies on a paragraph in the contract stamped across its face as follows:

"It is agreed that this contract contains the entire bargain between the shipper and the company, and that no conversation between owners or attendants of the live stock shipped hereunder and representatives of the company shall alter, vary or add to said contract or be valid."

The meaning of this language is that nothing that has passed between the shipper and the agents of the carrier shall be permitted to alter or vary the terms of the written contract. It does not mean that the shipper and the carrier have never entered into any other contract previously, any more than it means they will never enter into any other contract subsequently.

The shipper is entitled to recover as damages the deterioration in the value of his calves while they were in the stock pen awaiting shipment from the morning of September 15th to the evening of September 16th. The evidence tends to show that they drifted about twenty pounds each during this time, or 1,880 pounds in all; that the value of such calves on the Jonesboro market was twelve cents a pound. The shipper's loss on this account would, therefore, be $225.60. He is also entitled to recover $4, the cost of the bedding put in the car taken away from him; $8 for having water brought to the calves while they were detained in the pen; and $24 for feed necessary for the calves during this time. These items of expense are all proxi-

mately incident to the carrier's breach of contract to furnish a car.

There was evidence tending to show that the market price of calves such as these at Philadelphia was less at the time when these calves finally reached that point and were gotten ready for sale, than it was at the time when the calves would have reached Philadelphia had they been forwarded from Jonesboro on September 15th, as they might have been had the shipper been allowed to retain and load the first car. The trial judge instructed the jury that they might include this loss in their estimate of damages, and the court of civil appeals approved this instruction. We think this was erroneous. An allowance for the loss of a favorable market at Philadelphia assumes that there was a contract to transport to Philadelphia, and such an allowance would only be permissible in a suit based upon a breach of such a contract of transportation. As we have heretofore seen, this suit is alone maintainable upon the theory that it is not predicated upon a breach of the contract of transportation, but upon the breach of a previous contract to furnish a car.

Inasmuch as the damages recoverable herein may be readily calculated, as indicated above, a simple error in the charge as to the measure of damages does not require a reversal. This error may be cured by a *remittitur*. If the shipper will remit $140, the judgment will be affirmed for $260 and cost. Otherwise the judgment will be reversed and the case will be remanded for a new trial.