DAVID MILLER, Respondent, *v.* GREYVAN LINES, INC., et al., Appellants, et al., Defendants.

Fourth Department, May 12, 1954.

*John E. Leach, Jacob S. Linett* and *J. Edmund Kelly* for Greyvan Lines, Inc., appellant.

*Leland G. Davis* for E. F. Daley, Inc., appellant.

*Edward H. Kavinoky* for respondent.

WHEELER, J.  In June of 1947, plaintiff and defendant Greyvan Lines, Inc., entered into an oral agreement to transport and store plaintiff's household goods.  The move was from Cleveland, Ohio, where plaintiff then resided, to Buffalo, New York, where the goods were to be stored until called for by Mr. Miller.  Greyvan Lines, Inc., insists that this was the entire contract; the plaintiff has testified that the arrangement was more specific in that Greyvan Lines agreed to move his goods from Cleveland to Buffalo and to store them in its own fireproof warehouse in the latter city.  It is conceded that the goods, after being packed by representatives of either Greyvan Lines or its subsidiary corporation, Greyvan Storage, Inc., were (with the exception of some rugs) transported to Buffalo by defendant E. F. Daley, Inc., at the instance of Greyvan Lines.  It is also undisputed that the goods were placed by the Daley organization in its warehouse at 200 Cherry Street in the city of Buffalo.  Established by the record and not disputed upon this appeal is

the fact that the warehouse at 200 Cherry Street was not a fireproof warehouse. Plaintiff produced expert testimony in that regard and the secretary of the Daley corporation admitted the fact.

Sometime in the fall of 1947, the plaintiff received a statement for storage from the Daley concern, which he and his wife claim is the first time either of them knew the goods were not stored at the warehouse of Greyvan Lines or Greyvan Storage, Inc. Immediate inquiry was instituted by the plaintiff, who testified he was told by the Buffalo manager of Greyvan Storage, Inc., wholly owned by Greyvan Lines, Inc., that neither Greyvan corporation had a warehouse of any kind in Buffalo at the time plaintiff's goods were shipped there from Cleveland, that Daley often took care of Greyvan's storage, and that plaintiff's goods were as safe in the Daley warehouse as they would be in that of Greyvan Storage, as Daley operated a fireproof warehouse. Having thus assured himself, plaintiff took no further action with regard to the goods.

In August of 1948, the Daley warehouse at 200 Cherry Street was consumed by fire, completely destroying plaintiff's goods. Plaintiff was notified of this loss by registered letter. This action resulted. Greyvan Lines, Inc., and E. F. Daley, Inc., appeal from the judgment for the plaintiff against them for the sum of $10,000, with interest from August 12, 1948.

The Referee to whom the action was referred for trial has found that the plaintiff and defendant Greyvan Lines, Inc., entered into a contract whereby the latter was to move plaintiff's goods from Cleveland to Buffalo and to store those goods in its fireproof warehouse in Buffalo. Without outlining in detail all the evidence bearing on this issue, we find the evidence ample to support that finding. The greater share of the documentary evidence bearing upon this issue buttresses the testimony of the plaintiff regarding the original contract.

There is sufficient evidence to support both the plaintiff's version of the contract for transportation and storage and the finding that Greyvan Lines breached its contract, first, by not placing the goods in its own warehouse in Buffalo, and, secondly, by not storing them in a fireproof warehouse. This breach of the contract is sufficient to hold Greyvan Lines responsible for plaintiff's loss. (*Mortimer* v. *Otto,* 206 N. Y. 89; 6 Am. Jur., Bailments, § 228, pp. 333–334; 56 Am. Jur., Warehouses, § 154, pp. 392–393; Note, 12 A. L. R. 1322; Note, 17 A. L. R. 979.) " The rule is particularly applicable where the change of the

place of storage subjects the goods to a greater risk than contemplated by the contract of the parties.'' (56 Am. Jur., Warehouses, § 154, p. 393.)

Assuming the contract, the breach as regards storage is conceded. However, Greyvan Lines urges that plaintiff waived any breach of the contract when he received the first statement for storage from Daley and later learned his goods were being stored by Daley. There can be no waiver until the facts which are being waived are known to the person to be charged with the waiver. Under the circumstances of this case it seems certain that plaintiff never intentionally waived a known fact, as he never learned that Greyvan Lines had subjected his goods to a risk not contemplated by the contract. It was impossible for him to acquiesce in or ratify that of which he did not have knowledge.

As to the cause of action in fraud, we feel the plaintiff is weak in his proof offered to establish the necessary requisites. That the terms of the agreement were not carried out, there is no question, but doubt remains as to the intent with which any alleged misrepresentations by the representatives of Greyvan lines were made. In any event, as the plaintiff has established a cause of action against Greyvan Lines for breach of contract, the issue of fraud assumes considerably less materiality or importance.

Greyvan Lines, Inc., interposed as a partial defense to plaintiff's cause of action a limitation of liability provided in its uniform bill of lading. As a motor carrier in interstate commerce Greyvan Lines is governed by the provisions of the Motor Carrier Act, 1935, as amended (Interstate Commerce Act, part II, U. S. Code, tit. 49, § 301 *et seq.*); and was required to file with the Interstate Commerce Commission its '' tariffs showing all the rates, fares, and charges for transportation, and all services in connection therewith, of passengers or property in interstate or foreign commerce ''. (U. S. Code, tit. 49, § 317.) By virtue of portions of that Act (U. S. Code, tit. 49, § 20, subd. [11]; § 319) a motor carrier by filing its tariffs with the commission may limit its liability dependent upon and in relation to the rate charged. Defendant Greyvan Lines, Inc., sufficiently proved that it had filed its tariff. (See *Cincinnati & Tex. Pac. Ry.* v. *Rankin*, 241 U. S. 319, 326–328, and *New York Central & H. R. R.* v. *Beaham*, 242 U. S. 148, 151 and cases cited.) There is no doubt but that the limitation of liability would be effectual to limit plaintiff's claim if the bill of lading governed at the

time of the loss. However, if the interstate commerce aspect of this shipment was ended at the time of the fire loss, the limitation of liability is not applicable. '' In determining * * * whether the contract had been discharged, and the case removed from the operation of the Federal Act, regard must of course be had to the substance of the transaction. The question is not one of form but of actuality.'' (*Southern Ry.* v. *Prescott,* 240 U. S. 632, 639.) '' The question is, whether the limitation of liability may be deemed to have spent its force upon the completion of the carrier's service as such, or must be held to control, also, during the ensuing relation of warehouseman. * * * we have to deal with the effect of an express contract, made for the purpose of interstate transportation, and this must be determined in the light of the Act of Congress regulating the matter. The question is Federal in its nature '' (*Cleveland & St. Louis Ry.* v. *Dettlebach,* 239 U. S. 588, 591–593).

In this case the motor carrier's bill of lading and the tariff approved by the Interstate Commerce Commission provide that after sixty days in transit storage the interstate character of the shipment is ended. The actual carriage of the furniture here had ended more than a year prior to the loss. We conclude that the bill of lading with its provision for limited liability was discharged and spent prior to the occasion of the plaintiff's loss. (Cf. *Southern Ry.* v. *Prescott,* 240 U. S. 632, 639, *supra,* and *Cleveland & St. Louis Ry.* v. *Dettlebach,* 239 U. S. 588, 591–593, supra.) In that view of it, provisions in the bill of lading providing a time limitation for filing claims and granting the carrier the benefit of any insurance recovery by the shipper are also not applicable here.

Appellant Greyvan Lines also contends the terms and conditions agreed upon by the parties are merged in the written contract, the bill of lading, which, of course, limits the carrier's liability to a declared value far less than the actual value of the subject goods. This contention would be valid only as to the agreements of the parties in regard to the contract for transportation. As the uniform bill of lading does not undertake to set forth or consolidate the terms and conditions of a contract other than that for the transportation of goods, it follows that nothing in that instrument controls, affects or limits the parties to a contract for a service other than transportation.

We therefore find the evidence ample to sustain the judgment against Greyvan Lines, Inc.

Not so, however, as regards defendant-appellant E. F. Daley, Inc. There was no contractual relationship between Daley and the plaintiff, at least not prior to the payment of the first bill submitted by the warehouse corporation. Even then it would be difficult, if not impossible, to spell out an express contract to store in a specified place. The Referee has found the Daley corporation liable upon the ground of fraud, which is that upon which the complaint against Daley is predicated. Laying aside the obvious issues as to misrepresentation by advertising (Daley advertised '' fireproof storage '' on its billheads, stationery, envelopes, etc.), it suffices to note that the record contains no proof of reliance by the plaintiff upon any alleged misrepresentations of Daley; in fact, the record indicates the direct antithesis — that the plaintiff placed no reliance upon Daley's advertising, but sought elsewhere for his information. The judgment against Daley should be reversed and the complaint dismissed as to that defendant.

The record contains sufficient proof of damage to warrant the amount of the judgment. We do not reach the question of damages in excess of the $10,000 to which the Referee held the plaintiff was limited by virtue of the '' total sound value '', for the purpose of insurance, declared by Mrs. Miller in the '' Owner's Declarations of Value '', for the reason that the plaintiff has not appealed. For the same reason we do not consider the dismissal of the complaint as against Greyvan Storage, Inc.

The judgment in favor of the plaintiff against defendant, E. F. Daley, Inc., should be reversed and the complaint dismissed as to said defendant, and otherwise the judgment should be affirmed.

PIPER, J. (dissenting). I cannot agree with the majority that defendant-appellant Greyvan Lines, Inc. (hereafter referred to as Greyvan), made any agreement with plaintiff to store his household goods in a fireproof warehouse in Buffalo. The plaintiff and his wife had some talks with one or more employees of Greyvan concerning moving plaintiff's household goods from Cleveland to Buffalo. Both plaintiff and his wife testified that Tallman, one of these employees, represented that Greyvan had a fireproof storage warehouse in Buffalo. Tallman denies making any such representation and it developed that at the time these conversations took place in June, 1947, neither Greyvan nor its associate Greyvan Storage, Inc., had a warehouse of any

kind in Buffalo. Greyvan Storage, Inc., did acquire a warehouse in Buffalo in September, 1947.

Plaintiff testified in substance that he was in Buffalo in June, 1947, and received a telephone call from his wife informing him that Greyvan would not move the household goods without a letter from him authorizing the transaction, and he wrote a letter dated June 25, 1947, addressed to Tallman, the pertinent part of which is as follows: " This letter will be your authority to move my furniture and household goods from my apartment located at 2805 Ludlow Road, Cleveland into your storage warehouse at Buffalo, New York pending a further move to whatever place I may designate after I have located living quarters."

The shipping order, also referred to as the bill of lading, sets forth that the goods were consigned to plaintiff " 65 Purdy Street c/o E. F. Dailey Stge.,— Perm Stge City Buffalo State N. Y. Delivering Carrier GREYVAN LINES, INC." This instrument was signed " Dave Miller Per. N. S." and the record shows it was signed in Cleveland by plaintiff's son-in-law.

It seems clear that whatever oral conversations took place prior to this time were merged in the letter or the bill of lading or both. If the bill of lading is binding on plaintiff he had notice at the time the shipment was made from Cleveland that his goods were to be stored in the Daley warehouse. Plaintiff testified he had no knowledge that his goods were in the Daley warehouse until October, 1947, some three months or more after they had been moved from Cleveland to Buffalo. The fire which destroyed the warehouse occurred on August 12, 1948, some ten months after he admitted he knew where his goods were stored. During those ten months he took no steps to have them removed from the Daley warehouse.

Assuming that Greyvan is bound by plaintiff's letter and the direction therein to move the goods " into your storage warehouse at Buffalo " he had, according to his own testimony, ten months in which to take such steps as he deemed necessary to compel Greyvan to correct the misdelivery. It appears from the record that the only complaint he made was that he was receiving two bills for storage instead of one, as some of his goods, three or four rugs, were moved from Cleveland into Greyvan Storage Warehouse after Greyvan Storage had acquired a warehouse in Buffalo. I reach the conclusion that if there was a misdelivery of his household goods plaintiff waived all his rights by failing to act after he had ample notice of the misdelivery.

The majority of the court base their decision on an oral agreement that Greyvan would move plaintiff's goods into its fireproof warehouse in Buffalo. I have already set forth plaintiff's letter which does not mention the word "fireproof." I think it is common knowledge that no building is "fireproof" in the strict sense that under no circumstances can it be consumed by fire. Undoubtedly in the building trade the word "fireproof" means some type of construction. The only proof offered in this case on that subject was by an officer of the Buffalo Fire Department who saw the building after the fire and gave as his opinion that the Daley warehouse was not fireproof. He did not testify as to the type of construction which is ordinarily known as fireproof, although he did testify concerning the city ordinance. Consequently proof is not presented sufficient to establish plaintiff's cause of action on that theory.

However I base my decision on the ground that there was a complete waiver by plaintiff of misdelivery, if there was a misdelivery. The judgment against Greyvan Lines, Inc., should be reversed and plaintiff's complaint dismissed. I concur with the majority that the judgment against E. F. Daley, Inc., should be reversed and the complaint dismissed against it.

All concur, except PIPER, J., who dissents in part and votes for reversal and dismissal of the complaint as to both defendants-appellants, in a separate opinion.

Present — McCURN, P. J., VAUGHAN, KIMBALL, PIPER and WHEELER, JJ.

Judgment in favor of plaintiff against defendant E. F. Daley, Inc., reversed on the law and facts, with costs to said defendant, and complaint dismissed as to said defendant, with costs and otherwise judgment affirmed, with costs to plaintiff. Certain findings of fact disapproved and reversed and new findings made.