■ United Commodities-Greece, Plaintiff, v Fidelity International Bank, Appellant-Respondent; Pillsbury Company, Respondent-Appellant, and Trade Development Bank (France), Respondent, et al., Defendant. — Judgment, Supreme Court, New York County (Michael J. Dontzin, J.), entered June 21, 1982, after a nonjury trial, which *inter alia,* decreed in the second decretal paragraph thereof that the Pillsbury Company recover from Fidelity International Bank the total sum of $454,687.01, and in the third decretal paragraph that Fidelity International Bank have judgment over on its counterclaim against United Commodities-Greece in the sum of $455,237.01, is modified, on the law and the facts, without costs, to the extent of striking the said second and third decretal paragraphs of said judgment and granting judgment to Fidelity International Bank against the Pillsbury Company, and is otherwise affirmed. ¶ In order to provide payment for two lots of United States yellow corn it was purchasing from the Pillsbury Company (Pillsbury) for resale to the Soviet Union and shipment to a Black Sea port, United Commodities-Greece (UCG) caused two letters of credit to be issued, one for $2,975,000 by Banque de la Mediterranee (Bank Med) for which Fidelity International Bank (Fidelity) was the confirming bank, and the other for a like amount by the Trade Development Bank (France) (TDB) for which Republic National Bank of New York (Republic) was the advising bank. Both letters of credit provided for payment against presentation of Pillsbury's drafts and so-called page one documents which included a commercial invoice in the name of UCG, official inspection certificate of quality, official inspection certificate of weight, official Department of Agriculture phytosanitary certificate, certificate of United States origin and "Clean on Board" charter party bill of lading.

Both letters were required to be presented by December 15, 1976. The grain was to be shipped in a vessel nominated by UCG prior to November 30, 1976. Both letters contained a "Special Conditions" clause which provided that: "In case vessel not nominated prior to November 30, 1976, beneficiary may draw, not before December 10, 1976, against this letter upon presentation of a warehouse or dock receipt issued to order accompanied by a bank guarantee that beneficiary will load the goods on first demand of orderer and remit to the negotiating bank, free of charges, the covering Bill of Lading." The proposed UCG sale to Russia fell through and no vessel was nominated by UCG. Consequently Pillsbury attempted, purportedly in accordance with the "Special Conditions" clause, to secure payment under the letters of credit. Payment was ultimately refused and this action resulted. ¶ The trial court correctly determined that the documentation presented by Pillsbury was not in strict compliance with the letters of credit as required under the New York rule (see *Eximetals Corp. v Pinheiro Guimares, S.A.,* 51 NY2d 865, affg 73 AD2d 526; *Bounty Trading Corp. v S.E.K. Sportswear,* 48 AD2d 811) and therefore that Pillsbury was not entitled to recover as against Trade Development Bank. Pillsbury's recovery against Fidelity was predicated upon a finding by the Trial Judge that although the documents presented were not in strict compliance with the letter of credit, Fidelity accepted *substantial compliance* with the terms of the letter and thereby waived its right to require strict compliance. ¶ This was error. In order to establish a waiver it is necessary that there be an " 'intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it'." (*Werking v Amity Estates,* 2 NY2d 43, 52; *Miller v Greyvan Lines,* 284 App Div 133, 136, affd 308 NY 853; 21 NY Jur, Estoppel, Ratification and Waiver, § 88.) No such "intentional relinquishment" by Fidelity has been shown. The November 15 and December 7, 1976 telexes sent by Fidelity to the issuing bank Banque de la Mediterranee cited by the court below were not communicated to Pillsbury and thus cannot form the basis for any "reliance" by Pillsbury. Moreover, they only indicated that Fidelity would be bound to pay Pillsbury when it presented documentation under the special provisions. Any such documentation of course would have to be in "strict compliance" in order to bind Fidelity to make payment. Although the affidavit of December 13, 1976 by Fidelity's officer, Grayson, which was submitted in opposition to the motion by UCG for a preliminary injunction, stated that the Pillsbury documentation was in *substantial compliance* with the terms of the letter and would require payment but for the temporary restraining order, that statement, as well as the purported statement to Pillsbury's attorney that the guarantee required under the special conditions "was in order", was made without full knowledge that the documents were nonconforming. ¶ Thus, it cannot properly be said that they evince an "intentional relinquishment" of a known right. Significantly, at the time of these occurrences, Pillsbury was not a party to this action and no claim had been made at that time that the Pillsbury documents were nonconforming. It was not until UCG amended its complaint to allege that the documents were nonconforming that Fidelity became aware of such claim and determined that certain of the page one documents also were not in strict compliance. The "relinquishment of a right * * * ordinarily must be predicated upon full knowledge of all the facts upon which the existence of the right depends" (*S. & E. Motor Hire Corp. v New York Ind. Co.,* 255 NY 69, 72) and "[t]here can be no waiver until the facts which are being waived are known to the person to be charged with the waiver." (*Miller v Greyvan Lines,* 284 App Div 133, 136, affd 308 NY 853, *supra.*) Concur — Sandler, Sullivan, Bloom and Alexander, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I would affirm the determination in favor of Pillsbury for the reasons stated by the Justice at

Trial Term (Dontzin, J.) at the conclusion at the presentation of evidence, but I would reduce the amount of damages. ¶ This appeal arises out of a proposed sale by plaintiff United Commodities-Greece of two 25-ton shipments of corn to the Soviet Union, with payment to Pillsbury from whom United Commodities purchased the corn, guaranteed under two distinct letters of credit from separate banks. I disagree with the majority only with respect to the Fidelity International Bank letter. ¶ When the Soviet Union declined to issue import licenses for the corn, Pillsbury repurchased the corn from plaintiff, with the consent of the court and all parties, though the market price had fallen substantially since the original sale to plaintiff. ¶ The amount of damages, however, should be reduced to reflect incidental savings realized by Pillsbury (Uniform Commercial Code, § 2-708) as a result of the repurchase agreement, which obviated the necessity of paying brokerage commissions and transportation costs to a gulf port as required by the contract. These savings total $137,500, which consists of $12,500 in brokerage commissions at 50 cents per metric ton, and $125,000 in transportation costs at $5 per metric ton. ¶ Accordingly, the judgment should be modified to reduce the amount of damages awarded by an aggregate of $137,500 from $362,227.37 (which, including interest, makes up the judgment of $454,687) to $224,727.37, plus interest at the rates applied by Trial Term, and otherwise affirmed, without costs.