# CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. DETTLEBACH.

## ERROR TO THE COURT OF APPEALS, EIGHTH DISTRICT, STATE OF OHIO.

No. 229.  Argued November 29, 1915.—Decided January 10, 1916.

The effect of an express contract, made for the purpose of interstate transportation, must be determined in the light of the Act to Regulate Commerce.

Whether the responsibility of an interstate carrier as warehouseman of goods carried from another State and not called for by the consignee until after the time specified in the bill of lading after arrival at destination is to be measured by the valuation in the bill of lading is a question Federal in its nature.

Under the Act to Regulate Commerce, as amended by the Hepburn Act of 1906, the term transportation embraces all services in connection with the shipment, including storage of goods after arrival at destination.

The valuation expressed in a bill of lading of goods shipped in interstate commerce, and a limitation of the liability of the carrier made by the shipper for the purpose of obtaining the lower of two rates of freight, is, under the Carmack Amendment, valid and binding upon the shipper, and applies not only to the responsibility of the railroad company as a carrier while the goods are in transit but also to its responsibility as a warehouseman while holding the goods in storage after arrival at destination and notice to the consignee.

THE facts, which involve the responsibility of a carrier for goods under the applicable provisions of the Interstate Commerce Act, and the Carmack Amendment thereto, are stated in the opinion.

Mr. *Edward A. Foote,* with whom Mr. *Frank L. Littleton* was on the brief, for plaintiff in error.

Mr. *C. C. Young,* with whom Mr. *Jesse A. Fenner* was on the brief, for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

The court whose judgment we have here under review sustained a judgment rendered by an inferior state court in favor of Dettlebach and against the Railway Company for the market value of certain goods which, having been shipped in interstate commerce, were lost through the negligence of the Railway Company (the terminal carrier) while in its possession as warehouseman at the place of destination; overruling the contention that, because of a limitation of liability agreed upon by plaintiff's agent in consideration of a reduced rate of freight and contained in the bill of lading that was issued by the initial carrier, and by force of the provisions of the Interstate Commerce Act and its amendments, especially the Hepburn Act of 1906, the recovery ought to be limited in accordance with the stipulation. This question, it may be observed, as affecting the warehouseman's responsibility, was not passed upon in *Boston & Maine R. R.* v. *Hooker,* 233 U. S. 97, 109.

The facts are as follows: Dettlebach, the plaintiff, on September 18, 1911, shipped certain packages of merchandise, described as household goods, over the Chicago, Burlington & Quincy Railway and connecting lines from Denver, Colorado, consigned to his wife at Cleveland, Ohio. They were received for transportation under the terms of a bill of lading, prepared in the form approved and recommended by the Interstate Commerce Commission in its report of June 27, 1908 (14 I. C. C. 346, 352; 22 Annl. Rep. I. C. C. 1908, p. 57), which contained the following provision:

"It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, *that every service to be performed*

*hereunder* shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns."

Among the conditions printed upon the back were the following:

"Sec. 3. . . . The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property . . . at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence. . . ."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"Sec. 5. Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only. . . ."

Upon the face of the bill of lading was the following declaration signed by plaintiff's agent: "I hereby declare the valuation of the property shipped under this bill of lading does not exceed $10.00 per cwt."

The court found as a fact that the shipper by consenting to the limitation received a consideration in the shape of a substantial reduction in the freight rate, and that this supported the agreement to limit the company's liability. No question was made but that the agreement was in accordance with the filed tariff.

The goods thus shipped were transported by the initial carrier to the junction between its line and that of defend-

ant, and transported by the latter company to destination, where they arrived on September 27. They were not called for by the consignee, and remained in defendant's possession as warehouseman. until November 1, 1911, when, through its negligence, certain of the goods, of the market value of $2,792, were lost.

This action·having been brought to recover the value of the goods lost, and the claim of Federal right already mentioned having been made and overruled, a verdict and judgment went against defendant for the market value of the goods, and this was affirmed by the Court of Appeals, Eighth District, State of Ohio. The Supreme Court of the State declined to review the judgment. The case comes here under § 237, Jud. Code.

It is no longer open to question that if the loss had occurred in the course of transportation upon defendant's line, the limitation of liability agreed upon with the initial carrier, as this was, for the purpose of securing the lower of two rates of freight, would have been binding upon plaintiff, in view of the Carmack Amendment. *Adams Express Co.* v. *Croninger*, 226 U. S. 491, 509; *Kansas Southern Ry.* v. *Carl*, 227 U. S. 639, 648, 654; *Mo., Kans. & Tex. Ry.* v. *Harriman*, 227 U. S. 657, 668. The question is, whether the limitation of liability may be deemed to have spent its force upon the completion of the carrier's service as such, or must be held to control, also, during the ensuing relation of warehouseman. The Court of Appeals, recognizing the question as one of difficulty, reasoned thus:

"To occupy this twofold relation is of advantage to the company. As soon as the company can occupy it by replacing with it its former relation as a common carrier, it obtains the benefit of the rule of ordinary care instead of the higher degree of vigilance which the law charges upon carriers for hire. And the company is further advantaged by an early shifting of its status as carrier to that of warehouseman, through its right in the latter capacity to

charge for the storage of consigned goods, from the time
when its relation to them as carrier ceases."

The court considered that the declaration of value
stamped upon the bill of lading and signed by plaintiff's
agent, carried no suggestion that it should inure to the
advantage of a warehouseman after becoming inert for the
relief of the carrier, and that the custody and protection of
the goods as warehouseman is a distinct service from that
of their transportation, and for it additional compensation
may be charged; proceeding as follows: "The additional
compensation is not at all diminished in this case because
of the agreement of limitation of liability. The reduction
in the rate of carriage which can be used as a consideration
to support that agreement, is no consideration for a like
limitation of the liability as warehouseman, because there
is no reduction in warehousing charges provided or stip-
ulated for in the transaction. It is not easy to see why the
consideration—not a large one—which is permitted to
support the agreement to a limited liability on the part of
the carrier, should do double duty by serving also to up-
hold a like limitation of the liability of a warehouse-
man,—the latter not agreeing to abate any part of proper
storage charges. To so extend the contract of release
would give an advantage to the warehouseman, but none
to the owner. To allow that consideration would be to
permit the carrier to cast off his obligation as carrier and
take up a lighter burden, while he denies to the shipper all
right to share in the benefit of the changed relation. The
rate which the warehouseman may charge for storage re-
mains unaffected by the release of liability as a carrier.
The warehouseman could collect the reasonable value of
his service whether the limitation of the carrier's liability
was or was not stipulated. He could not be compelled to
take less because of the stipulation. He could collect no
more if the stipulation had not been made."

We recognize the cogency of the reasoning from the

standpoint of the common-law responsibility of a railway company as carrier and as warehouseman. But we have to deal with the effect of an express contract, made for the purpose of interstate transportation, and this must be determined in the light of the Act of Congress regulating the matter. The question is Federal in its nature. *Mo., Kans. & Tex. Ry.* v. *Harriman,* 227 U. S. 657, 672; *Atchison &c. Ry.* v. *Robinson,* 233 U. S. 173, 180.

The provision that we have quoted from the contract is to the effect that "every service to be performed hereunder" is subject to the conditions contained in it. One of these conditions is, in substance, that where a valuation has been agreed upon between the shipper and the carrier such value shall be the maximum amount for which any carrier may be held liable, whether or not the loss or damage occurs from negligence. And that this, as a mere matter of construction, applies to the relation of warehouseman as well as to the strict relation of carrier, is manifest from the further provision that property not removed within 48 hours after notice of arrival may be kept "subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only." Thus, "any loss or damage for which any carrier is liable" includes not merely the responsibility of carrier, strictly so called, but "carrier's responsibility as warehouseman" also.

And this is quite in line with the letter and policy of the Commerce Act, and especially of the amendment of June 29, 1906, known as the Hepburn Act (34 Stat. 584, c. 3591), which enlarged the definition of the term "transportation," (this, under the original act, included merely "all instruments of shipment or carriage") so as to include "cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof *and all services in connection with* the receipt, deliv-

ery, elevation, and transfer in transit, ventilation, refrigeration, or icing, *storage*, and hauling *of property transported;* and it shall be the duty of every carrier subject to the provisions of this Act to provide and furnish *such transportation* upon reasonable request therefor, and to establish through routes and just and reasonable rates applicable thereto. All charges made for *any service rendered or to be rendered in the transportation* of passengers or property *as aforesaid, or in connection therewith,* shall be just and reasonable; and every unjust and unreasonable charge *for such service or any part thereof* is prohibited and declared to be unlawful."

From this and other provisions of the Hepburn Act it is evident that Congress recognized that the duty of carriers to the public included the performance of a variety of services that, according to the theory of the common law, were separable from the carrier's service as carrier, and, in order to prevent overcharges and discriminations from being made under the pretext of performing such additional services, it enacted that so far as interstate carriers by rail were concerned the entire body of such services should be included together under the single term "transportation" and subjected to the provisions of the Act respecting reasonable rates and the like. The recommendation of the Interstate Commerce Commission for the adoption of the uniform bill of lading was of course made in view of this legislation, and while not intended to be and not in law binding upon the carriers, it is entitled to some weight. It recognizes—whether correctly or not, is a question not now presented—the right of the carrier to make a charge, the amount of which has not been definitely fixed in advance, for storage as warehouseman in addition to the charge for transportation; but at the same time it recognizes that a valuation lower than the actual value may be agreed upon between the shipper and the carrier, or determined by the classifi-

cation or tariffs upon which the rate is based; and it is a necessary corollary that what should be a reasonable charge for storage would be determined in the light of all the circumstances, including the valuation placed upon the goods.

We conclude that, under the provisions of the Hepburn Act and the terms of the bill of lading, the valuation placed upon the property here in question must be held to apply to defendant's responsibility as warehouseman.

*Judgment reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE HOLMES took no part in the consideration or decision of this case.