**RAILWAY EXPRESS AGENCY, Inc.,**

v.

**Thomas J. HOLT and Israel Sussman, individually and trading as Thomas J. Holt Company.**

**Civ. A. 16798.**

United States District Court
E. D. Pennsylvania.

Sept. 16, 1957.

John J. Dautrich, of White, Williams & Scott, Philadelphia, Pa., for plaintiff.

Ned Stein, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

The trial judge makes the following Findings of Fact and Conclusions of Law:

### I. Findings of Fact

1. Plaintiff, a corporation organized and existing under the laws of the State of Delaware, is a common carrier engaged, inter alia, in the interstate carriage of goods, and is subject to the provisions of the Interstate Commerce Act and its amendments and to the regulations of the Interstate Commerce Commission (Complaint, par. 1).

2. Defendants, Thomas J. Holt and Israel Sussman, trade under the partnership name of Thomas J. Holt Company with its principal place of business at 208 Walnut Street, Philadelphia 6, Pennsylvania (Complaint, par. 2).

3. On May 13, 1953, the Hitchcock Company, of Salinas, California, shipped collect 840 cartons of lettuce from Salinas, California, to Philadelphia, Pa., via the plaintiff's transportation facilities (Complaint, par. 4, and Exhibit P–1).

4. Plaintiff's agent at Salinas, California, supervising the handling of carloads of perishable traffic determined the weight of the shipment at origin for purposes of assessing express charges (Deposition of Clark, pp. 2, 5).

5. Such total weight was the estimated total weight and was determined to be 34,944 pounds. The weight per carton, for billing purposes, was determined as 41.6 pounds (Deposition of Clark, pp. 6, 7; Exhibit P–1).

6. The process for arriving at the estimated weight was to weigh two groups of five cartons selected at random from the Hitchcock shipment (215 and 211 pounds, respectively), total the weight (426 pounds), divide by ten (42.6 pound-per-carton average), and then deduct one pound per carton to allow for the moisture drawn off in the cooler, resulting in the 41.6 pound-per-carton weight used for billing (Clark deposition, pp. 7–9, 13, 14, 15).

7. At the shipping point and time of this shipment, plaintiff did not have facilities for weighing the railroad car loaded and empty to determine the weight of the lading (Clark deposition, p. 10).

8. When this shipment was made, the volume of traffic at the Agency receiving point was very heavy and all the cartons could not have been weighed separately without delaying the forwarding (Clark deposition, p. 10).

9. The shipper did not furnish the plaintiff with any statement or estimate of the weight of each carton loaded, but no request for such information was made (Clark deposition, pp. 10, 12).

10. The plaintiff duly delivered said 840 cartons of lettuce to its destination, where it was accepted by the consignee, the defendants named herein, which consignee by such acceptance became liable to plaintiff for the freight charges from Salinas, California, to Philadelphia, Pa. (Complaint, par. 8).

11. Plaintiff has demanded payment from defendants of the sum of $1,501.04, which was the total charge computed by plaintiff for this shipment (see P–1), but defendants have denied the right of plaintiff to any sum in excess of $1,213.-92, which sum has been paid.

12. By the provisions of an Act of Congress approved February 4, 1887, entitled "An act to regulate commerce," and its amendments and supplements, every common carrier subject thereto is required to file with the Interstate Commerce Commission, and print and keep open for public inspection, schedules showing all rates, fares, and charges for transportation between points on its own route and between points on its own route and points on the route of any other carrier. The shipper and carrier are alike bound by established and published tariff rates under provisions of §§ 3(2) and 6(7) of the Interstate Commerce Act (49 U.S.C.A. §§ 3(2) and 6(7)).

Said Act further provides that the term "transportation" as used in the Act shall include all instrumentalities of shipment or carriage and all services in connection with the receipt, handling, delivery, transfer in transit, storage, and handling of property transferred (49 U.S.C.A. § 1). (Complaint, par. 6.)

## II. Discussion

Plaintiff brings this suit to recover the difference between $1,501.04 and $1,213.-92, namely, $287.12.

Rule 10 of the Official Express Classification No. 35, I.C.C. No. 7950, filed April 11, 1952, issued pursuant to the directions contained in paragraph 1, § 6, of the Interstate Commerce Act (see Finding of Fact 12) provides as follows:

"(A) Unless otherwise provided, charges must be based upon the actual gross weight of each shipment.

"(B) When the volume of traffic is so large as to make it impossible to weigh each separate package without delaying the forwarding, estimated weights may be used for shipments of articles of food, provided they closely approximate the actual weights; such estimated weights will be arrived at by weighing a number of packages of the same size and containing the same commodity, the average weight to be adopted as the estimated weight."

■ Although it is recognized that "the actual weight of shipments constitutes the true basis upon which to assess transportation charges,"[1] and that "inaccuracies in weighing result in the imposition of unreasonable charges and in discrimination between shippers,"[2] by reason of the perishable nature of the

commodity (lettuce) and the large movement of this type of traffic during relatively short periods of time, the utmost expedition in transportation is required. Therefore, the obtaining of actual weights would generally be impracticable and the use of estimated weights which approximate actual weights is mutually beneficial to both carriers and shippers and has long been approved. See Northwest Potato Exchange v. Great Northern Railway Co., 172 I.C.C. 671 (1931); Simpson Fruit Co. v. Wells Fargo & Co., 23 I.C.C. 412 (1912); Estimated Weights on Fruits and Vegetables, 245 I.C.C. 479 (1941); White & Co. v. B. O. S. W. R. R. Co., 12 I.C.C. 306 (1907); and Davies v. Illinois Central R. R. Co., 16 I.C.C. 376 (1909).[3]

■ Defendants contend that plaintiff has not, within the meaning of Rule 10 above, proved that the volume of traffic on the day of the shipment, May 13, was so large as to make it impossible to weigh each separate package without delaying the forwarding. Plaintiff produced a witness (its agent at Salinas in May 1953, who had actual knowledge of the shipment) who testified that at the time of the year when this shipment was made, the volume of traffic was very heavy. (See Finding of Fact No. 8.) In an attempt to rebut this, defendants submitted evidence via shipping point records of produce compiled by the Department of Agriculture that although 322 carload lots of freight shipments of lettuce went out from Salinas, California, that date, only one carload lot of lettuce of express shipment went out from Salinas that date.

There is nothing in the record to show (1) that express cars of less than carload

1. Peters v. O. S. L. R. R. Co., 20 I.C.C. 598 (1911).

2. In re: Bills of Lading, 52 I.C.C. 671, 694 (1919).

3. See such cases as Pennsylvania R. R. Co. v. International Coal Co., 1913, 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446; Atchison, T. & S. F. Ry. Co. v. Robinson, 1914, 233 U.S. 173, 34 S.Ct. 556, 58 L. Ed. 901; Texas & Pac. Ry. v. Abilene Cotton Oil Co., 1907, 204 U.S. 426, 27 S. Ct. 350, 51 L.Ed. 553; and Cleveland, Cincinnati, Chicago & St. Louis Ry. v. Dettlebach, 1916, 239 U.S. 588, 36 S.Ct. 177, 60 L.Ed. 453, for the principle that rules on file with the I.C.C. are binding on these parties.

lots did not leave Salinas that day,[4] (2) that full (or less than full) carload lots of commodities other than fruits and vegetables did not leave Salinas that day; or (3) that the large volume of freight traffic [5] which admittedly was leaving Salinas at that time did not make it essential that this carload of perishable material in large numbers of relatively small cartons [6] be weighed by sample if the shipment was to leave promptly.[7] All three possibilities could support the above testimony of plaintiff's witness (the Railway Express agent supervisor of the Salinas office of plaintiff), who was the only witness actually present in Salinas on that day who could have had first-hand knowledge of the conditions there.[8]

■ Defendants further contend that since this was a new type of shipment, namely, lettuce in cartons, the freight tariff adopted by the railroads establishing a 31-pound rule per carton should be justification for its position that there could not have been 42 pounds per carton. But, in the absence of any contradictory evidence, the procedure described in Finding of Fact No. 6 for arriving at the estimated weight of this shipment satisfies the hearing judge that the procedures specified in Rule 10 have been adequately complied with and the freight tariff should have no applicability to this shipment.[9]

### III. Conclusions of Law

1. Jurisdiction is based upon the fact that the matter in controversy arises under certain laws of the United States, to wit: an Act of Congress, approved February 4, 1887, entitled "An Act to Regulate Commerce," and its amendments and supplements.

2. Rule 10 of the Official Express Classification No. 35, I.C.C. No. 7950, governs the computation of the rate of payment for this shipment.

3. The shipment of lettuce was correctly weighed according to the provisions of Rule 10 of the Official Express Classification No. 35, I.C.C. No. 7950.

4. The charges on the Waybill (Exhibit. P-1) are applicable and have not been shown to have been unreasonable or otherwise unlawful. The evidence has not been sufficient to support a finding of unjust discrimination or undue prejudice.

5. Defendants are liable to plaintiff for the freight charges, as indicated in

4. Defendants' witness who operates a Traffic Bureau in Philadelphia testified that vegetables are not shipped in less than carload lots, but there is nothing in the record that less than carload lots of other commodities did not leave Salinas that day.

5. No definitive statement appears in the record as to whether the freight shipments were loaded on the same track as the express shipments.

6. It would also be possible to consider the large number of cartons (840) to be in themselves a "sufficient volume of traffic" within the purview of Rule 10 so as to allow use of the estimated weight procedure, but in view of the Findings above made, the hearing judge does not need to consider this possibility.

7. The wording of Rule 10 makes no restriction that the volume of traffic must be express for plaintiff to use estimated weights, and the hearing judge concludes that such a construction of the Rule would result in extended delays of express shipments and would hinder the purpose

behind the permissible use of estimated weights, namely, to expedite shipments.

Defendants' contention that plaintiff acted unreasonably in not having facilities for determining actual weights of cars loaded and empty, and that the absence of such facilities should not free plaintiff from the responsibility of determining actual weights, instead of resorting to estimated weights, does not appear to have merit. There were admittedly scales available to plaintiff's employees at the point of shipment.

8. The hearing judge declines to rely on defendants' witness, the representative of the United States Department of Agriculture, who was only interested in certain commodities and was not present in Salinas at the time of this shipment.

9. There is no proof of defendants' contention that the lettuce weighed by plaintiff's agent was not the lettuce that went into the car that was shipped on May 13. In the absence of any substantiation of such claim, the hearing judge rejects it.

the Collect Waybill No. 631934 (P–1), namely $1,501.04.

6. Plaintiff may recover judgment against defendants in the amount of $287.12, with interest from May 13, 1953.