BEKINS VAN & STORAGE CO., a Corporation,
Appellant v. FANNY MILLER ANDERTON and
DEIRDRE COAKLEY, Respondents.

No. 4258

July 15, 1960      354 P.2d 188

*Jones, Wiener and Jones,* of Las Vegas, for Appellant.

*Foley Bros.,* of Las Vegas, for Respondents.

## OPINION

By the Court, BADT, J.:

Respondents entered into a written contract with appellant, by way of a certain "combined, uniform household goods bill of lading and expense bill" and a certain "confirmation of order, agreement for services, and rate quotation" for the transportation of certain household goods from Los Angeles, California, to Las Vegas, Nevada. After arrival in Las Vegas and before the goods were removed from the warehouse the goods were destroyed by fire. Respondents sued for the value of the goods less the amounts that were paid them by appellant. Anderton recovered judgment for $12,913.44 and Coakley for $592.79, both amounts bearing interest.

The only question presented on appeal is the legal construction of the instruments referred to, particularly the confirmation of the order, agreement for services, and rate quotation, in connection with provisions of the federal interstate commerce act, 49 U.S.C.A., sec. 1 et seq., and regulations made by the Interstate Commerce Commission thereunder—all in the light of the facts and circumstances connected with the transportation and storage of the goods and their destruction by fire while in the warehouse.

The contract of the parties provided in effect that, in consideration of a minimum charge for transportation and insurance premium, the agreed value of the goods was fixed at 30 cents per pound on a stated weight of 5,200 pounds. Liability for loss was limited to this value.

Respondents contended successfully in the lower court that this limitation was effective only during the period the goods were being transported, that when they reached their destination the provision in the agreement

relating to transportation terminated, and that thereupon the state law rather than the federal interstate commerce act and the regulatory rules, regulations, and provisions thereunder, became applicable. Under the provisions of the Warehouse Receipts Law, NRS 95.010 et seq., a warehouseman is required to deliver goods upon proper demand therefor or, upon failure to do so, becomes liable for the value thereof upon an implied contract for the ordinary storage of goods for hire.

It is appellant's contention that, under the contract, the goods were considered in transit for a 60-day period following delivery to the warehouse and that during such period the interstate character of the shipment continued; that, as the goods were destroyed 40 days after delivery to the warehouse, they were still legally in transit and thus subject to the contract limitation of liability. Such amount had already been paid respondents by appellant.

The trial court found that, after delivery of the household goods to Atlas Storage & Transfer, Inc., in Las Vegas, they were no longer in transit, that the limitation of liability clause which pertained to the shipping portion of the contract did not pertain to the storage, and that appellant's liability for the full value of the goods resulted from the conduct of its agent, Atlas Storage & Transfer, Inc.

We turn, first, to some of the salient facts which furnish the backdrop for the picture and action that developed. The respondents, then residing in Los Angeles, had secured employment in Las Vegas and respondent Anderton purchased a duplex there. As they expected to start their employment in Las Vegas in February 1954, respondent Anderton called appellant to arrange for the storage of the goods of respondents until the duplex was ready for occupancy. The circumstances were detailed to appellant's agent in Los Angeles and their desire that the goods be stored until called for upon completion of the duplex which was anticipated to be some 60 to 120 days thereafter. Some discussion was had as to whether it would be preferable to store the goods in Los Angeles

or in Las Vegas, and storage at Las Vegas was selected. The goods arrived at Atlas Storage & Transfer, Inc., in Las Vegas January 29, 1954, and Anderton was notified that the goods were there. She went to the office of Atlas Storage & Transfer, Inc., on February 8, 1954, where she paid the transportation bill of $371.64 and also the sum of $26 for approximately 30-days advance storage. On March 10, 1954 the warehouse, including the stored goods, was destroyed by fire. On pre-trial hearing it was stipulated that the fire resulted from the negligence of Atlas Storage & Transfer, Inc.

As noted, the trial court found that Atlas Storage & Transfer, Inc., was the agent for storage of the goods for appellant.

Appellant, in its opening brief, recites that three legal issues are presented on the appeal. They may be condensed into the single issue as to whether the goods were, at the time, under contract and Interstate Commerce Commission regulations, under the status of "storage-in-transit" and subject to the limitation of the carrier's liability based upon the declared value of the goods shipped. Appellant assigns two specifications of error: (1) the court's finding that the liability for the loss was to be determined by the mandatory provisions of the Warehouse Receipts Law, NRS 95.070, and (2) in concluding that appellant was liable to respondents for the full value of the goods lost. No error is assigned in the court's finding that Atlas was the agent of Bekins. The appeal was briefed and argued to this court solely upon the issues so declared and the errors thus assigned.

The bill of lading shows the receipt of the goods by appellant from Anderton consigned to Anderton "c/o Atlas Tsfr. for S.I.T. [storage-in-transit], Las Vegas, Nevada." Following recital of such destination the form provides, "If to storage: [ ] regular, [ ] in transit." A check mark indicates "in transit." In the fine print provisions on the back of the bill of lading is found the following provision: "* * * after placement of the property for delivery at destination * * * the property

* * * may be kept in vehicle, warehouse or place of business of the carrier, subject to the tariff charge for storage and to carrier's responsibility as warehouseman only or in the option of the carrier, may be removed to and stored in a warehouse * * * subject to * * * a reasonable charge for storage. * * * The consignor shall be liable for the advances, tariff charges, packing, storage, and all other lawful charges."

The confirmation of order, agreement for services, and rate quotation likewise shows consignment from Anderton to "same c/o Atlas Transfer & Stg." Under "provision for storage" there is again checked "in transit." Limitation of the carrier's liability is clearly stated. The following appears in the fine print appearing on the back of the agreement, "Liability (A) General. All references in this agreement to 'company' apply to the company, carrier, or warehouseman in possession of all or any of the property herein described."

The parties agree that conditions of the transportation are governed by the provisions of the Western States Movers' Conference Tariff No. 1–A. The following provisions are there found: "(A) Storage in transit of shipments covered by this tariff is the holding of the shipment in the warehouse of the carrier or its agent, for storage, pending further transportation, and will be effected only at specific request of the shipper. For the purpose of this rule, a carrier may designate any warehouse to serve as its agent. (c) Shipments moving under this rule may be stored only once and for a period not to exceed sixty (60) days from date of unloading into the warehouse. When not removed at the expiration of the time limit specified herein, the interstate character of the shipment will cease, the warehouse shall be considered the destination of the shipment, the warehouseman shall be agent for the shipper and the property shall then be subject to the rules, regulations and charges of the warehouseman. When a shipment remains in storage after the expiration of sixty (60) days, all accumulated carrier charges must be paid, as follows: 1—Transportation charges for pick-up or delivery as

provided in Paragraph (d); 2—Storage charges for sixty (60) days as provided by this tariff. (See Item 730); 3—Additional services, advances or other lawful charges, (if any)."

Both parties agree that the contract between the parties contemplated two services — transportation and storage. Appellant insists, however, that the storage involved was storage-in-transit, contrary to the court's finding and conclusion that the interstate transportation had terminated with the arrival of the goods at destination. We are satisfied that the evidence and the documents involved give ample support to the court's finding and conclusion.

Appellant relies strongly upon the notations in the bill of lading and confirmation that there was to be storage "in transit," and upon the Western States Movers' Conference Tariff provisions above quoted. At first blush these items appear to lend support to appellant's contention. Yet many items militate in support of the trial court's conclusion. The destination of the shipment was from the shipper herself, as consignor, to the shipper herself, as consignee, in care of the warehouse at Las Vegas. There is not the slightest indication anywhere in the case that further transportation was to be required. Upon arrival of the goods at the warehouse in Las Vegas the consignor-consignee was at complete liberty to keep or leave it in storage or to transport it by any means she might choose to some other, or further, destination. Transportation under the contract had ceased. The fact that "storage-in-transit" had been checked in the contract could not make it so if it was not so. Although appellant relies strongly on Miller v. Greyvan Lines, 284 App.Div. 133, 130 N.Y.S.2d 378, 382, that court noted: "* * * if the interstate commerce aspect of this shipment was ended at the time of the fire loss, the limitation of liability is not applicable. 'In determining * * * whether the contract has been discharged and the case removed from the operation of the federal act, regard must, of course, be had to the substance of the transaction. The question is not one of

form, but of actuality'." Such is precisely the situation here.

Nor do the provisions of secs. (A) and (C) of the Western States Movers' Conference Tariff support the contention of appellant. Under (A), storage-in-transit covered by the tariff is clearly defined as the holding of the shipment in the warehouse of the carrier or its agent, *pending further transportation.* Section (C) merely provides the maximum time of 60 days in warehouse, after which there is the presumption that the interstate character of the shipment will cease. Appellant insists repeatedly that this is equal to a provision that the interstate character of the shipment maintains for a full period of 60 days after unloading into the warehouse. This is simply a non sequitur. The goods were no longer in transit after arrival at destination, with no further transportation contemplated. The 60-day provision has no bearing on the issues of this appeal. The goods were no longer in the course of transportation. They were no longer "in the course of passing from point to point." See More, Reynolds & Co. v. Lott, 13 Nev. 376, 383; Davis v. First National Bank (Tex.Civ. App.), 245 S.W. 1009.

There was received in evidence a form of Atlas Storage & Transfer, Inc., "Non Negotiable Warehouse Receipt and Contract" which contained a complete description of all of the goods. This, however, was never executed or delivered. On the contrary, when respondents called at the warehouse in response to notification that the goods had arrived, they paid and received a receipt for the Bekins transportation bill of $371.64 and storage charge of $26 from January 29, 1954 to February 29, 1954. Atlas also issued and delivered its separate receipt for this total of $397.64. Such receipt bore the Bekins shipment number 6020. The Atlas Storage manager, in explaining the transaction of the payment of the money, the issuance of the receipt, and the withholding of the complete form of Nonnegotiable Warehouse Receipt and Contract, stated that he withheld such receipt, waiting for the expiration of the 60-day period

when the interstate transportation status would cease. His appraisal of the situation can lend no support to the same contention now made by appellant.

Appellant cites a number of cases, in some of which the court held that the transportation service had not terminated and that the limitation of liability clause in the bill of lading applied. In others, the court found that the interstate nature of the transportation had terminated and that therefore the limitation of liability clause did not apply. In virtually all cases the court laid down the general rule that although the limitation of liability applied if the interstate nature of the transportation was still in effect, it likewise recited the converse, that if the transportation service had terminated, liability clauses in the bill of lading, under the applicable tariff regulations no longer applied. See Manlowe Transfer & Distributing Co., Inc. v. Department of Public Service of Washington, 18 Wash.2d 754, 140 P.2d 287, 155 A.L.R. 928, holding that the essential character of the commerce and not the mere billing or forms of contract determine the status of the movement of the freight at the time of loss; and the annotation of that case in the A.L.R. citation with many cases cited in support of the general statement, "Intent," says the annotator, "while not alone conclusive, is probably the most important single determinant of continuous carriage." See. also Oregon R. & Navigation Co. v. Campbell (Circuit Court, D. Ore.), 180 F. 253; Gulf, C. & S. F. Railway Company v. Texas, 204 U.S. 403, 27 S.Ct. 360, 51 L.Ed. 540; Southern Ry. Co. v. Prescott, 240 U.S. 632, 639, 36 S.Ct. 469, 472, 60 L.Ed. 836; Cleveland, C. C. & St. L. R. Co. v. Dettlebach, 239 U.S. 588, 36 S.Ct. 177, 60 L.Ed 453 (in which, though holding that the interstate transportation covered all services including warehouse at terminal, relied, with repeated emphasis, on clauses in the bill of lading covering such matters, which do not appear in the instant bill of lading, and based its conclusion upon the terms of the bill of lading) ; Western Transit Co. v. A. C. Leslie & Co., 242 U.S. 448, 37 S.Ct. 133, 61 L.Ed. 423 (involving storage in transit, as against our present situation in which we have found that the storage was not

in transit, as no further transportation was contemplated). See also dissenting opinion of Mr. Justice Clarke in which Justices McKenna, Brandeis and Day concurred in Erie Railroad Company v. Shuart, 250 U.S. 465, 39 S.Ct. 519, 63 L.Ed. 1088, where, under the facts, the majority held that the interstate service of the railroad had not terminated.

As we have noted, the briefs and oral argument were concerned entirely with the question as to whether or not the interstate transportation had ceased, to the end that the limitation of liability was or was not in effect at the time of the destruction of the goods by fire in the warehouse. Appellant's opening brief had made no mention of lack of agency in the warehouse on behalf of the carrier as its principal. The answering brief had casually mentioned that there was ample evidence to support the court's finding of agency. Appellant's reply brief mentioned just as casually, in answer to respondents' statement that, if the goods had once been removed from the warehouse by the consignees, the interstate character of the shipment would, of course, have come to an end, that the only trouble with this theory was that then the warehouse would have ceased to be Bekins' agent, and respondents' only action would be against Atlas. The unbriefed and unargued question of agency impelled us to ask counsel to submit further briefs on the point. These further briefs brought forth nothing new of importance. Appellant simply injected into the case (for the first time) the fact that three Bekins companies were involved, namely, Bekins Van & Storage Co., Bekins Van Lines, Inc., and Bekins Van Lines Co., three separate entities, with different authorizations for transportation, and that the appellant herein, Bekins Van & Storage Co. (although it had accepted the contract to transport the goods from California to Nevada), was a common carrier operating solely in the state of California. We find, from its expert witness, that Bekins Van Lines is a collective name, does not refer to any one of the specific companies, that there are several such

companies through the United States, that Bekins Van Lines includes all of them, and that this particular transaction was with Bekins Van Lines' division of Bekins Van & Storage Co.; that Bekins Van & Storage Co. was the agent and that Bekins Van Lines' division was the carrier. This labyrinth leads us nowhere. The simple answer, however, is found in appellant's reply brief in distinguishing from the present case the facts in Davis v. First National Bank (Tex.Civ.App.), 245 S.W. 1009, in which appellant notes that that case involved "a situation where the carrier gave up the goods to a stranger. *In our case the carrier relinquished the goods to its agent * * *.*"

There was introduced in evidence a "special agency agreement" in which Atlas Storage & Transfer, Inc., is appointed agent. It is peculiar in some respects. The principal is not named as Bekins Van & Storage Co. but as "Bekins Van Lines, Inc., and/or Bekins Van Lines Co., corporations, hereinafter called 'the carrier'." It appoints Atlas "as its special agent at Las Vegas, Nevada, for the sole and exclusive purpose of soliciting and securing long distance moving business for the carrier * * *." However, this "exclusive" purpose is expanded by the acceptance of a number of obligations by the agent—10 in number. "6th: The agent further agrees: (1) that it will pick up, distribute and hold shipments of goods for the carrier when requested * * *."

Appellant calls attention to the fact that Bekins Van & Storage Co. was not a party to this agency agreement. Yet the other two Bekins companies therein agreed that Bekins Van & Storage Co. would assign to Atlas all rail and water freight shipments under the control of Bekins Van & Storage Co. destined for the city in which the agent operates.

It is worthy of some note that Atlas admits the agency in storing the goods. It is of some further significance that in the regular form of Nonnegotiable Warehouse Receipt and Contract utilized by Atlas in general (and prepared but not issued or delivered in this particular instance as above noted), there is endorsed the following: "Authorized agent for—" and then appears the

Bekins' usual trade-mark sign, bearing a map of the United States, and reading, "Bekins Van Lines—Nationwide Moving."

There was ample support for the finding of agency. Affirmed with costs.

McNAMEE, C. J., and PIKE, J., concur.