[Crim. No. 44.   Fifth Dist.   Oct. 22, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. THE SOUTHERN PACIFIC COMPANY, Defendant and Respondent.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, Nat A. Agliano and Barry L. Bunshoft, Deputy Attorneys General, for Plaintiff and Appellant.

David P. Bancroft and Lawrence L. Howe for Defendant and Respondent.

BROWN, J.—A criminal complaint, valid on its face, was filed in the Justice Court, Madera, charging defendant-respondent with violation of section 597 of the California Penal Code, a misdemeanor, in that defendant did wilfully and unlawfully fail to provide 41 head of cattle with proper food and drink at Madera, California. Defendant interposed a demurrer.

A stipulation of facts was entered into and filed with the court. Briefly stated, it recites that the defendant transported 41 head of cattle from Ogden, Utah, to Madera, California, over its line of railroads as a revenue freight shipment. At Madera the cattle car was uncoupled and placed on one of

defendant's tracks. The cattle were left therein without proper food and water. The consignee had not accepted delivery and defendant still had charge and custody of the animals.

Defendant's demurrer was sustained without leave to amend and the complaint was dismissed on the grounds that Congress had preempted the field by enactment of the Cruelty to Animals Act (45 U.S.C. §§ 71-74), and hence section 597 of the Penal Code as applied to the regulating of the care and feeding of livestock in interstate shipment was invalid.

On appeal, the judge of the superior court issued his opinion affirming the action of the justice court.

The case was certified, upon application of the plaintiff, to this court and we ordered the case transferred for a hearing and decision.

Our task is to answer the following question:

"Do the provisions of Title 45, U.S.C., §§ 71-74 preclude the application of the provisions of section 597 of the Penal Code of the State of California to a common carrier where the cattle are at their destination?"

Examining the question on appeal, it will be noted that it is composed of two parts. The first part deals with the problem of whether the federal act supersedes and supplants the state law. The second part presupposes that the cattle had reached their destination and were therefore separated from interstate commerce. If the second part is found to be true, the first part need not be further considered. It is not debatable that, with exceptions not relevant here, when property is separated from the stream of interstate commerce and has become intermingled with the mass of property within the state, it is subject to and protected by state law. (*In re Maier,* 103 Cal. 476 [37 P. 402, 42 Am.St.Rep. 129]; *Motor Trading Co.* v. *Ingels,* 43 Cal.App.2d 20 [110 P.2d 132].)

Were the cattle still in interstate commerce at the time of the alleged offense? The answer must be in the affirmative.

Plaintiff's argument that we are not bound by the stipulation of facts entered into by counsel cannot be sustained. The established rule is that a court is not "bound by an erroneous stipulation as to a conclusion of law which is not a stipulation of fact" (*People* v. *Singh,* 121 Cal.App. 107, 111 [8 P.2d 898]), and where counsel agree, as they may, to a given set of facts, their stipulation cannot prevent the court from declaring a particular legal conclusion which follows from those facts (*People* v. *Jones,* 6 Cal.2d 554 [59 P.2d 89]; *San Francisco Lumber Co.* v. *Bibb,* 139 Cal. 325 [73 P. 864];

*Lieb* v. *Superior Court,* 199 Cal.App.2d 364, 367 [18 Cal.Rptr. 705] ; *Duncan* v. *Garrett,* 176 Cal.App.2d 291, 294 [1 Cal.Rptr. 459]). ■■■ The stipulation before us was voluntarily entered into and recites a given state of facts relied upon by both plaintiff and defendant as well as two courts below. Justice and fairness dictate that it may not now be disregarded by this court and, since it contains all facts available to us, it must operate as the gateway to the path of decisional law we must follow.

Plaintiff urges that transportation may be complete upon the expiration of a reasonable time therefor even though there has been no physical transfer of the commodity to the consignee, and cites the cases of *Kirmeyer* v. *State of Kansas,* 236 U.S. 568 [35 S.Ct. 419, 59 L.Ed. 721] and *Charleston & W. C. Ry. Co.* v. *Gosnell,* 106 S.C. 84 [90 S.E. 264, L.R.A. 1917B 215]. Both cases deal with intoxicating liquors transported across state lines. In each the rule that transportation is not complete until delivery to the consignee *or the expiration of a reasonable time therefor* is mentioned, but in the *Charleston* case the court explained the rule thusly : In early cases the federal Supreme Court held that liquors transported from one state into another did not lose their interstate commerce character until arrival at destination and delivery to the consignee. Dealers took advantage of the rulings to leave shipments in the custody of the carrier so long as they saw fit, whether reasonable or unreasonable, for the purpose of evading state prohibition laws. The federal Supreme Court then interpreted the word ''delivery'' to include not only an actual transfer of the liquors to the consignee but likewise a constructive delivery from the fact that they had remained in the carrier's custody an unreasonably long time after arrival at their destination. These two cases fail to aid plaintiff. No case has been cited and none has been found which applies the ''constructive delivery by lapse of an unreasonable time'' rule to a commodity other than liquor. Nor is there a late decision applying the rule to the transportation of liquor, probably for the reason that the Webb-Kenyon Act (27 U.S.C. § 122) and the Twenty-first Amendment to the federal Constitution now authorize states to prohibit or regulate the importation of liquor. (See *Milam* v. *Commonwealth,* 200 Va. 68 [104 S.E.2d 60].)

Case authority to which defendant has referred us supports the conclusion that the cattle, even if it be assumed they had reached the destination city, were not separated from inter-

state commerce by delivery to the consignee and surrender of control and dominion by defendant. In *Erie Railroad Co.* v. *Shuart*, 250 U.S. 465 [39 S.Ct. 519, 63 L.Ed. 1088], a car containing horses was held to be still in the course of transportation even though it had arrived at the destination city, was uncoupled and turned over to consignee Shuart, who was bound by the bill of lading to unload the horses, and the railroad employees had withdrawn. The federal Supreme Court, in defining the word "transportation" as it applies to interstate carriers followed the language contained in the Hepburn Act (49 U.S.C. § 1(3)(a)) to the effect that transportation included "cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof and all services in connection with the receipt, delivery, elevation and transfer in transit, ventilation, refrigeration, or icing, storage and hauling of property transported."

*Rhodes* v. *State of Iowa*, 170 U.S. 412 [18 S.Ct. 664, 42 L.Ed. 1088], dealt with the criminal liability under an Iowa penal law of the carrier's station agent for moving a package containing intoxicating liquor from the station platform to a freight warehouse. It was held that the movement was part of the interstate commerce transportation and was done before the law of Iowa prohibiting the transportation of such goods within the state could constitutionally attach.

In *McNeill* v. *Southern Ry. Co.*, 202 U.S. 543 [26 S.Ct. 722, 50 L.Ed. 1142], railroad cars containing coal arrived at the destination city and were placed on the railway company's team track. The consignee declined delivery at that place and the railroad then moved the cars to a distant siding where they remained for at least several days. Despite arrival at the destination city, notification to the consignee, and the lapse of several days, the United States Supreme Court held that the cars were still in the course of interstate commerce, not having been delivered to the consignee but remaining on the tracks of the railroad company in the condition in which they had been brought into the state.

Other cases which support the proposition that interstate shipment is not completed until there has been a delivery to the consignee and a complete surrender of dominion and control over the car by the carrier are *Danciger* v. *Cooley*, 248 U.S. 319 [39 S.Ct. 119, 63 L.Ed. 266]; *Chapman* v. *United States*, 151 F.2d 740; *Murphy* v. *United States*, 133 F.2d 622; and *O'Kelley* v. *United States*, 116 F.2d 966.

It must be admitted, as plaintiff contends, that the factual situations in these cases differ each from the other and each from the case here under consideration. Yet the tests therein set out for determining when interstate transportation ends are equally applicable to this case. ▮ Measuring our facts by those tests, we must conclude that the cattle, still confined in the car in which they had been transported into this state, undelivered to the consignee, and still in the care and custody of the railroad were, at the time of the offense charged, in the course of transportation in interstate commerce.

▮ Thus we reach the first part of plaintiff's question: Do the provisions of the federal Cruelty to Animals Act preclude the application of the provisions of section 597 of the California Penal Code to a common carrier engaged in interstate commerce? Again, our answer must be in the affirmative.

At the outset it should be noted that the right of the state to enforce section 597 of the Penal Code in areas where the field has not been occupied by federal law is not here questioned. ▮ We do not decide that the section is unconstitutional per se; we decide only that it is unconstitutional in its application to the facts of this case. We are not unmindful of the interest of the state in protecting animals within its borders from inhuman treatment by man by imposing and enforcing criminal sanctions. But if this state statute may not be constitutionally applied to a carrier's conduct toward animals in interstate commerce, no great industry of the state will be threatened, no economic loss will follow, and neither the lives, property nor welfare of state citizens will be affected. When weighed in the balance, the interest of the state must yield to the national interest.

The Congress derives power to regulate interstate commerce from Article I, section 8, clause 3 of the Constitution of the United States, but it is established that that grant of power does not completely preclude the several states from exercising their inherent police powers in matters of local concern, where Congress has not blanketed the field, even though such state enactments may indirectly affect interstate commerce. (*Huron Portland Cement Co.* v. *City of Detroit,* 362 U.S. 440 [80 S.Ct. 813, 4 L.Ed.2d 852, 78 A.L.R.2d 1294]; *Simpson* v. *Shepard,* 230 U.S. 352 [33 S.Ct. 729, 57 LEd. 1511, 48 L.R.A. N.S. 1151].)

▮ State action affecting interstate commerce has been held to be precluded where Congress has evidenced its intention to completely preempt the field sought to be regulated,

even though the state action is merely complementary to the federal law (*Campbell* v. *Hussey*, 368 U.S. 297 [82 S.Ct. 327, 7 L.Ed.2d 299]). Where, as here, the congressional enactment fails to expressly state whether its provisions occupy a field in which states are otherwise free to legislate, the settled rule ". . . that exclusion of state action may be implied from the nature of the legislation and the subject matter although express declaration of such result is wanting" (*Bethlehem Steel Co.* v. *New York State Labor Relations Board*, 330 U.S. 767 [67 S.Ct. 1026, 91 L.Ed. 1234]) is applicable. We are convinced the federal act here involved meets the test set out in *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447], and adopted by Mr. Chief Justice Warren in the case of *Commonwealth of Pennsylvania* v. *Nelson*, 350 U.S. 497 [76 S.Ct. 477, 100 L.Ed. 640], as follows:

"First, '[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'"

Section 597 of the Penal Code prohibits cruelty to animals generally, in various enumerated forms, and makes violation a crime. It is not directed at interstate commerce but lays its hand upon "Every person." This broad language embraces the carrier, its officials, agents and employees. The statute does not spell out what constitutes cruelty by withholding from animals food, water, shelter or protection from the weather. No particular standard of conduct is set up; this is a matter left to the trier of fact. The act charged must be accompanied by malice. Jurisdiction is in the state courts.

The federal Cruelty to Animals Act (45 U.S.C. §§ 71-74) commonly known as the "Twenty-eight Hour Law," imposes liability on the railroad alone and does not touch employees or officers. Animals in interstate commerce may not be confined for more than 28 hours, or for more than 36 hours upon written request of the owner, and must then be unloaded, placed in properly equipped pens, fed, watered and rested for at least five hours (§ 71) at the expense of the owner, and the carrier is granted a lien upon the animals for food, care, and custody furnished (§ 72). A penalty of $100 to $500 for "knowingly and wilfully" violating sections 71 and 72 (§ 73) may be recovered from the carrier in a civil action brought in the name of the United States. Federal courts are vested with exclusive jurisdiction (§ 74).

The detailed care with which the federal act was framed, spelling out the maximum number of hours for con-

finement during which food and water may be withheld by the carrier, a minimum number of hours for the animals to rest in properly equipped pens, providing for the amount and method of imposing a civil penalty and conferring exclusive judicial jurisdiction upon the federal courts, leads to the ineluctable conclusion that the Congress has intended to occupy the entire field of regulating the treatment of livestock carried in the stream of national commerce.

We are persuaded that the California Legislature is in accord with this view for, in 1933, it enacted section 422 of the Agricultural Code. That section deals with the same subject matter and its language closely follows the federal act, but whereas the federal law addresses itself to the carrier alone, the Agricultural Code section is addressed to "any officer, agent or conductor of any railroad in this state" who carries and transports specified animals in carloads. It is significant that the Legislature saw fit to exclude from the operation of this section the carrier as a separate entity. It is a logical assumption that the carrier was intentionally omitted for the reason that the Legislature believed the federal act governing the treatment of animals in interstate commerce overrides state action directed toward the same objective.

The aim of the federal enactment is to secure humane treatment of all livestock carried through and into the states by carriers engaged in national commerce (*United States* v. *Delaware L. & W. R. Co.*, 206 F. 513; *United States* v. *Atchison T. & S. F. Ry. Co.*, 185 F. 105 [107 C.C.A. 323]; *United States* v. *Atlantic Coast Line R. Co.*, 173 F. 764 [98 C.C.A. 110]) and to fix the point of time at which the common law duty of a carrier to feed and water animals must be exercised (*Kent* v. *Chicago etc. R.R. Co.*, 189 Mo.App. 424 [176 S.W. 1105]). The federal act constitutes a single, comprehensive scheme which, by its natural operation, amply assures uniform humane treatment of animals transported interstate and imposes uniform liability upon all common carriers. So pervasive are its terms that reason compels the inference Congress left no room for the states to supplement it.

The judgment is affirmed.

Conley, P.J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 19, 1962.